Gas Co. v. Ralston.

THE WICHITA NATURAL GAS COMPANY, *Appellee*, v.
ROBERT RALSTON *et al., Appellants.*

No. 16,027.

SYLLABUS BY THE COURT.

1. HOMESTEADS —*Alienation* — *Easement* — *Consent of Husband and Wife*—*Interference Enjoined.* Where a husband and wife own and occupy a farm as a homestead and each of them consents that a gas company may lay its pipe line across their land, and relying upon such consent the gas company at great expense lays its pipe upon and across the premises, the owners have no right forcibly to remove or injure such pipe line, and upon threatening or attempting to do so may be enjoined.

2. ———— *Joint Consent of Husband and Wife.* Where in such a case the gas company commences an action to enjoin the owners from forcibly destroying or injuring the completed pipe line, and in such action it appears that the husband and wife each expressly consented that the pipe line might be placed upon the homestead, the question as to whether such consent was given jointly or not is immaterial.

Appeal from Butler district court; GRANVILLE P. AIKMAN, judge. Opinion filed November 6, 1909. Affirmed.

STATEMENT.

THE gas company commenced this action in the district court of Butler county perpetually to enjoin the defendants from disturbing or interfering in any manner with the pipe line which the gas company had constructed upon the defendant's land. Upon the trial, which was to the court without a jury, the court made findings of fact and conclusions of law which read:

FINDINGS OF FACT.

"(1) That the plaintiff, at all times mentioned in its petition, was and now is a corporation organized and existing under and by virtue of the laws of the state of Delaware, with its principal office in the city of Pittsburg, Pa., and its branch office in the city of Wichita, in the state of Kansas, and that it is duly authorized to do business in said state.

"(2) That the said defendant Robert Ralston now is,

and at all times mentioned in the petition was, the owner of the northeast quarter ($\frac{1}{4}$) of section thirty-three (33), in township twenty-seven (27) south, range four (4) east, in Butler county, Kansas, and that he and his wife, codefendant, Mrs. Robert Ralston, at all times mentioned in plaintiff's petition, resided upon and now reside upon and occupy said land as their homestead.

"(3) That at the time of the filing of the petition in this case, and for several months prior thereto, the plaintiff was engaged in the construction of a pipe line from its gas wells in Montgomery county, Kansas, through the counties of Chautauqua, Cowley, Butler, Sedgwick, Reno and Harvey, in said state, for the purpose of transporting natural gas through its main line and branch lines to the cities of Wichita, Hutchinson, Newton, El Dorado, and all intermediate towns, for the purpose of supplying the inhabitants in said cities with natural gas for heating and lighting purposes.

"(4) That in the construction of said lines it has one branch line commencing in the vicinity of Rose Hill, in said county of Butler, which extends in a northern direction near Augusta, in said county, and thence in a northeasterly direction to the city of El Dorado, in said county of Butler.

"(5) That at the time of the commencement of this action plaintiff had constructed its said branch line from its main line in the vicinity of Rose Hill to the city of El Dorado, except a small portion thereof, which has since been completed, and plaintiff is now supplying natural gas through said line to the inhabitants of said city of El Dorado for heating and lighting purposes; that said line so constructed crosses the land of the said Robert Ralston for a distance of about ninety-seven (97) rods, which is buried beneath the surface of the ground to such a depth as to in no way interfere with said land for cultivating purposes.

"(6) That before the construction of said line across said land the said Robert Ralston verbally agreed and consented with plaintiff's duly authorized agent that plaintiff might lay, construct and maintain said line across said land, and thereafter, to wit, about the —— day of September, 1906, the said defendant Mrs. Robert Ralston verbally consented that plaintiff might construct said pipe line across said premises; and thereafter, and on or about the —— day of September, 1906,

plaintiff peaceably entered upon said lands and constructed said pipe line without any objection on the part of the said Robert Ralston or Mrs. Robert Ralston, or any of the other defendants herein.

"(7) That after said pipe line was constructed said defendant Robert Ralston verbally agreed with plaintiff, through its duly authorized agent, that he, said defendant, would accept the sum of fifty ($50) dollars in full for the right of plaintiff to lay, keep and maintain said pipe line across his said land, and for all damages in the construction thereof. And at the request of said defendant, in compliance with said agreement on its part, plaintiff deposited said sum of fifty ($50) dollars in Brown's bank in the city of El Dorado for him, said defendant; that since the commencement of this action said Robert Ralston went to said bank and received said sum of fifty ($50) dollars so deposited, and gave his receipt for same, and he was then, ever since has been, and is now, satisfied with said consideration and is now making no objection to the construction of said pipe line over and across his said land.

"(8) That at the time of the commencement of this action, the said defendants C. M. Davis and Lee Ralston were, without any just cause or excuse, threatening to tear up and remove said pipe line from said land, and in pursuance of said threats had removed a part of the dirt covering said pipe line preparatory to removing the same as they had threatened to do, and that said defendant Mrs. Robert Ralston was directing and encouraging the said C. M. Davis and Lee Ralston in their acts in attempting to remove said pipe line from said land, and the said Robert Ralston was acquiescing in said acts and making no objection thereto.

"(9) That said pipe line is a public utility, and if taken up and removed from said land plaintiff would sustain great and irreparable damage and the inhabitants of the city of El Dorado, Kan., would be prevented from enjoying the comforts and benefits of natural gas which is supplied to them through said pipe line."

### CONCLUSIONS OF LAW.

"As a conclusion of law the court finds that the plaintiff is entitled to a judgment and decree of this court perpetually enjoining and restraining the said defendants, Robert Ralston, Mrs. Robert Ralston, Lee Ral-

ston and C. M. Davis, their agents, servants and employees, from taking up and removing or in any manner interfering with said pipe line located on said land and from in any manner interfering with the maintenance thereof."

*N. A. Yeager,* and *T. A. Kramer,* for the appellants.
*Stanford & Stanford,* for the appellee.

The opinion of the court was delivered by

GRAVES, J.: The first ruling of which the defendants complain is the refusal of the court to sustain their demurrer to the plaintiff's petition. The ground of the demurrer was that the petition contained several causes of action which were improperly joined. The court evidently concluded that the petition stated but one cause of action, which consisted of a purpose upon the part of all the defendants to injure the plaintiff's pipe line, this purpose being evidenced by open threats of violence on the part of some of the defendants and by active encouragement given to such threats by the other defendants, whereby they were all combined in a common design to carry out the threats made. This would make them jointly liable in one and the same cause of action. This seems to have been the view of the district court, and the averments of the petition seem to justify such a conclusion. We think, therefore, that this ruling was not erroneous.

It is further claimed that the land was a homestead and the joint consent of the husband and wife was not obtained for a pipe line right of way. The evidence can probably be so interpreted as to show a joint consent, both in point of time and intent. The wife consented, and at the time she consented the husband had already consented and was then consenting, so that their consent joined in point of time, and their intent that the pipe line should occupy the land was identical. But whether or not this interpretation is justified by the evidence is not important, as there is evidence tend-

ing to show that the wife gave her consent, and upon this evidence the court found that she did consent. There being some evidence to sustain this finding, it is conclusive here. The court does not find in express terms that the consent given was the joint consent of husband and wife which is required to authorize the alienation of the homestead, but it does find that actual consent was given by both husband and wife. This consent is sufficient to bar both the husband and wife and all persons acting for them from destroying or injuring the property of the plaintiff.

It will be remembered that this is not an action brought by the owners of the property to prevent the plaintiff from entering into the possession of the premises or to eject it after a wrongful entry, as was done in the cases of *Pilcher v. A. T. & S. F. Rld. Co.,* 38 Kan. 516, and *Withers v. Love,* 72 Kan. 140, cited by the defendants. The plaintiff, after entering peaceably into possession of the farm with the express consent of the owners, and after expending large sums of money in making improvements thereon, is entitled to have its property protected from forcible destruction or injury by the owners of the land, whether the proceedings under which it entered amount in law to an alienation of the homestead right or not. If the owners were not willing for the plaintiff to put its pipe line upon their premises, they or either of them could easily have prevented it until proper legal steps had been taken which would give it that right.

It seems evident, although the record does not expressly so state, that the plaintiff was permitted to place its pipe line upon the land while negotiating with the parties interested as to the amount of damages the owners should receive, and after the work was completed, the parties being unable to agree, this action was commenced.

It is insisted that several of the findings of fact are not sustained by the evidence, but this court can not

weigh testimony. The findings of fact, when supported by any evidence, can not be disturbed here.

The statute of frauds, estoppel and other questions have been discussed by counsel, but in our view they are not controlling and need not be considered.

In any view under the facts found by the trial court the plaintiff is entitled to the remedy prayed for. The judgment of the district court is affirmed.