No. 23,253.

M. G. RAY and ISADORE RAY, *Appellants,* v. W. R. BRUSH et al.,
*Appellees.*

SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Lease not Dated—Took Effect on Delivery—Terms of
   Lease Sufficiently Definite—Marginal Note on Lease of Homestead—No
   Material Change or Alteration.* A lessee who procured oil and gas leases
   covering a number of tracts of land in a field obtained a lease on plaintiffs'
   tract, in which it was stipulated that operations should commence either
   on plaintiffs' land or on neighboring land in the field within six months and
   when such operation was begun the lease should be deemed to be exclusive
   until such operation should cease, that the lessee should deliver as royalty
   one-eighth of the oil and one-fourth of the gas produced on plaintiffs' land
   so long as either was produced in paying quantities, and that when aban-
   doned by the lessee the lease would terminate. A part of plaintiffs' land
   constituted their homestead, and both plaintiffs, husband and wife, joined
   in the execution of the lease. Afterwards, and when the wife was absent,
   the husband induced the lessee to agree that a rental should be paid to
   plaintiffs for the period between the production of oil on the neighboring
   land and the commencement of operations on plaintiffs' land, and this
   agreement was entered on the margin of the lease. About two months
   after the execution of the lease, operation was begun on the neighboring
   land and producing wells were drilled. The lease was not dated, but there
   is no question as to the time of its execution and delivery.

   *Held,* First, that the lease took effect when it was executed and delivered
   and that time fixed the starting point of the six months period for the
   commencement of operations.

   Second, neither is the lease invalid because no time was fixed when ex-
   ploration and development should be commenced on plaintiffs' land. In
   such a case there is an implied covenant that operations shall be commenced
   within a reasonable time. As plaintiffs opposed and prevented operations
   on their land, they cannot insist on a forfeiture of the lease because of the
   nonobservance of the implied covenant.

   Third, the making and entry of the marginal agreement after the lease
   was signed by the lessor wife, and to which she did not assent, did not
   enlarge the rights of the lessee nor diminish the right of occupancy already
   granted by the plaintiffs, and is not such an interference with or invasion of
   her homestead rights as to destroy the validity of the lease.

2. SAME—Other objections considered and held not to be material.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed
November 4, 1922. Affirmed.

*A. M. Jackson,* of Winfield, and *A. L. Noble,* of Wichita, for the appellants.
*Hugo T. Wedell,* and *John J. Jones,* both of Chanute, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by M. G. Ray and Isadore Ray against the defendants to forfeit an oil and gas lease executed to W. R. Brush on December 17, 1915, upon four hundred acres of their lands, which was later assigned to the A-1 Oil & Gas Company. Two other leases to the same land were executed by plaintiffs to Thomas A. Simpson, one on one hundred and sixty acres, executed July 10, 1917, and the other upon the remainder of the tract on August 21, 1917. Simpson assigned a two-thirds interest in his lease to Isaac Shuler and E. B. George. The plaintiffs asked for the cancellation of all the leases which they had executed and the quieting of their title against all of the defendants. At the close of plaintiffs' testimony judgment against the plaintiffs was given, and from that they appeal.

The Brush lease, which was assigned to the A-1 Oil & Gas Company two days after it was executed, provided that the lessee should commence operations either on the leased land or on a block of land in the immediate neighborhood within six months and that plaintiffs should have a certain proportion of the oil or gas obtained from plaintiffs' land, the privilege of operating to continue as long as oil or gas might be produced in paying quantities, and that, when abandoned for that purpose, the grant should cease and no longer be binding on either party. After this lease was executed an additional provision was added on the margin to the effect that a dollar an acre per year of rent should be paid to the lessors after production is found in the neighborhood in paying quantities until development is started on the lessors' land. There had been a conflict between the defendants as to their rights in the land under the several leases, but their claims were compromised and adjusted among themselves, and on March 22, 1918, the A-1 Oil & Gas Company contracted with Simpson, Shuler and George for a division of all the acreage in certain proportions, and all have joined in defending against the action of forfeiture. The validity of the original or Brush lease is the principal subject of controversy in the case.

It may be noted that two months after the execution of the lease drilling was commenced on neighboring land in accordance with the terms of the lease, and thus the express condition in it, that operations should be begun within six months, was performed. It is contended, however, that the lease is void for indefiniteness in that it

was not dated and therefore no time was fixed for the commencement of operations. The lease took effect upon its execution and delivery. Plaintiffs state in their petition that it was made and delivered on December 17, 1915. That fixed the starting point of the six-months period, and with this concession the provision is rendered as certain as if the date had been written in the lease. It follows that the lease is not void because of the omission of the date.

There is a further contention that it is invalid because no time was fixed for the commencement of exploration and development on plaintiffs' land. As the lease provided, development was begun in a part of the oil field in the vicinity of plaintiffs' land, and producing wells were drilled there. It is said that oil being produced on the neighboring land, operations might be postponed indefinitely on that of the plaintiffs, and there could be no end to the lease until operations had been abandoned on the neighboring land. It is true that no time is fixed to begin drilling on plaintiffs' land in case oil is found in paying quantities in other parts of the field. The six-months limit applied to the field and was evidently stipulated as an assurance of good faith in the early development of the field of which the plaintiffs' land was a part. It did provide for exploration and development, for the payment of royalties, the methods of operation, and for damages on the surface of the land which might result from operation, but no time was specified when drilling on that particular tract should begin. It was further provided for the termination of the lease; that is, when oil and gas were no longer produced in paying quantities. Evidently it was the intention of the parties that the land should be explored and developed and, no time being stipulated in the lease for the commencement of operations upon plaintiffs' land, there is an implied covenant that operations should begin within a reasonable time. It must be inferred that the lease was executed and taken for the benefit of both lessor and lessee, and as the development of the land was the subject of agreement and, no time being stated for such development to begin, there is an implied covenant that it was to begin within a reasonable time to be determined with due regard to the situation and rights of each party. (*Alford v. Dennis,* 102 Kan. 403, 170 Pac. 1005, and cases cited.) It was not contemplated that drilling should begin on this land within six months after the execution of the lease, for the plaintiffs stipulated that the lessee should have the option to begin either on this land or on the neighboring land within that period. A day

Ray v. Brush.

or two before the expiration of the six-months period, and after the drilling had begun on the neighboring land, plaintiffs served a notice of forfeiture upon the lessee, and later they refused to accept a payment of rental, and they also instituted proceedings to prevent the lessee from drilling or operating on their land under the lease. They are therefore not in a position to complain of the nonobservance of the implied covenant or that drilling was not commenced within a reasonable time. Besides, there is a well-established rule in equity that a forfeiture will not be declared for breach of an implied covenant. (*Alford v. Dennis*, supra.)

It is further contended that the lease is void because of the marginal stipulation written upon it after it had been signed by the plaintiffs, and it appears to have been placed there when Mrs. Ray was not present and without her knowledge and consent. It appears that a part of the leased land was the homestead of the plaintiffs, and it is said that the marginal entry upon the lease is such an invasion of her homestead rights as to destroy the validity of the lease. The parties came to an agreement as to the terms of the lease, and when it was prepared it was signed by all of the parties, including Mrs. Ray. After it had been signed and Mr. Ray had learned that other leases in the field contained a provision that if oil was found in one tract of the field, a rental should be paid to the owners of other tracts in it until development on the owner's tract was begun, Mr. Ray asked that he be given a like rental. The lessee agreed to the request, and the provision was entered on the margin of the lease previously executed. An oil and gas lease upon a homestead which interferes with the substantial occupancy and enjoyment of it, is deemed to be an alienation, and the joint consent of husband and wife to the lease is held to be essential to its validity. (*Land Co. v. Gas Co.*, 43 Kan. 518, 23 Pac. 630; *Gas Co. v. Land Co.*, 54 Kan. 533, 38 Pac. 790; *Gas Co. v. Ralston*, 81 Kan. 86, 105 Pac. 430.) Here the original lease, which was duly signed, provided for the occupation of the land for the purpose of development, and in this Mrs. Ray joined with her husband in giving joint consent. The subsequent agreement and entry upon the margin of the lease when she was not present did not enlarge or change the rights of the lessee nor diminish the rights and occupancy of the lessor as given in the original lease. In fact it did not relate to occupancy at all nor confer rights in the lessee to

interfere with the substantial enjoyment of her homestead rights.
This later agreement between the lessee and her husband was made
wholly for the benefit of the plaintiffs, by which they were to receive
a rental from the lessee for the period between the production of
oil on neighboring land and the development on plaintiffs' land.
The marginal agreement not having increased or diminished the
leasehold estate, nor authorized any interference with the occu-
pancy of the homestead beyond that included in the previous agree-
ment to which joint consent was given, the fact that the marginal
entry was not assented to by the wife does not impair the validity
of the lease. In a somewhat analogous case it was held:

"An agreement changing the terms and manner of paying rentals of a gas
and oil lease on a homestead from cash to a royalty of one-tenth of the
product does not enlarge or diminish the leasehold estate and need not be
in writing or consented to by the wife of the lessor." (*Wilson v. Gas Co.,* 75
Kan. 499, syl. ¶ 1, 89 Pac. 897.)

There the lease on the homestead provided that the lessee should
pay the lessors as royalty $5 a month on each producing well drilled
upon the land. By a subsequent agreement, to which the wife did
not consent, it was stipulated that in lieu of the consideration first
recited a royalty of one-tenth of the oil produced should be paid
by the lessee. In responding to the contention that the change
made without the consent of the wife rendered the lease void, it
was said:

"The lease was regularly executed by the wife. This modification or change
in payment of the rentals from cash to a royalty did not interfere with the
wife's occupancy and enjoyment of the land as a homestead. It was neither
a sale nor a conveyance of the homestead or of any interest therein.

.    .    .    .    .    .    .    .    .    .    .    .

"Changes may be made in the terms and conditions of such a lease which
do not either create a new estate or extend or limit an existing interest in
the estate created by the lease. As an example, the lease in question pro-
vides that the grantee shall begin operations within one month from the
delivery of the lease. This time might be extended by an oral agreement of
the parties without extending or limiting the leasehold estate. So with the
condition that the lessors should have free gas for their own use. The same is
true of the condition that the lessors should have a rental of five dollars per
month for each oil and gas well from which products were taken of a com-
mercial value. Neither the verbal agreements changing the manner of pay-
ing the rental for the oil and gas wells nor the division order created any
interest or estate in the land." (p. 503.)

As to the Simpson leases, it is contended that he obtained them

on the promise to clear away and procure the cancellation of the Brush lease. Whatever preliminary negotiations may have been made prior to the execution of the leases, no such agreements were included in the lease, and there is no competent evidence to show the leases were procured by fraud. Besides, all of the parties are claiming under the Brush lease and, it being held valid, there is little materiality in the contentions as to the other leases. There is no contention among the lessees with respect to their rights under the several leases. The fact that the defendants did rely on all of the leases affords no grounds for the application of the rule of accession or as to the confusion of property.

Finding no error in the record, the judgment is affirmed.