No. 38,841

Emma E. Woelk, Leila F. Woelk Shawhan, Amelia L. Woelk Teppe and Mary E. Woelk, *Appellants*, v. George F. Woelk, John C. Woelk, also known as John C. Woelk, Jr., and Mary Jane Woelk Klink, *Appellees*.

(254 P. 2d 297)

Opinion filed March 7, 1953.

*C. R. Holland,* of Russell, argued the cause, and *Marvin E. Thompson* and *George W. Holland,* both of Russell, were with him on the briefs for the appellants.

*John C. Woelk, Jr.,* of Russell, was on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: The sole question involved in this appeal is whether under the terms of the last will of Christian Woelk, his widow Emma E. Woelk as the owner of a life estate, with power of disposal, has the sole right to lease the lands owned by the testator for oil and gas purposes.

Although voluminous pleadings were filed, the parties later

filed a stipulation made up of a statement of facts, a statement of the contentions of the various parties and five specific questions of law to be decided by the trial court. The trial court answered each question and rendered a judgment which included that Emma E. Woelk did not have the sole right to lease the lands for oil and gas purposes. Some of the parties appealed, and while error was specified in three particulars, in their brief appellants state that the sole question involved is as first stated. Under the circumstances we need not review the pleadings and shall only state such facts as bear on the question presented. In our statement the parties will be referred to only by their Christian and surnames, middle names and initials being omitted.

Christian Woelk died on September 22, 1932, leaving a last will and testament which was duly admitted to probate in the probate court of Russell county. He was survived by his wife Emma, his two sons John Woelk and George Woelk, and three daughters Leila Shawhan, Amelia Teppe and Mary Woelk.. At the time of his death he owned two sections of land in Russell county, a house and lots in the city of Russell and some personal property. Under his will he gave all of his personal property to his wife and it is not involved. The question presented arises under "Clause Three" of his will, which reads as follows:

"I give, devise and bequeath to my beloved wife, Emma E. Woelk, all of the real property which I may own at my death, for and during her life time, or until she remarries, with full power to sell and convey said real estate and to execute and deliver good deeds of conveyance for same. This right is given to her in order that she may be comfortably provided for during her remaining years, and also the power to sell and reinvest any portion of said property as her judgment and discretion may dictate or suggest. However, she shall not have the power to mortgage or incumber any of said real estate. After the death of my said wife, all of the remainder of said property shall be divided equally among my five children. Should she remarry, then said property shall be divided equally among my five children and my said wife, being an undivided one-sixth share or part to each. Should any of my five children die prior to my death or before the death or remarriage of my said wife, then the share of such deceased child shall be and become the property of the issue of his or her body. Should such deceased child leave no issue surviving him or her, such share shall revert to and become a part of such remainder estate to be divided among the remaining living children, or if deceased, their issue as hereinbefore provided."

In a very summary way it may be said that sometime prior to November 25, 1944, Emma Woelk conveyed the Russell city property to her daughter Mary, and her sons John and George and her

daughters Leila and Amelia commenced an action to have the deed canceled. On October 8, 1947, John Woelk, George Woelk, Leila Shawhan and Amelia Teppe, as parties of the first part, Mary Woelk as party of the second part, and Emma Woelk as party of the third part, entered into a written agreement under the terms of which the deed to Mary was permitted to stand and Emma was given a restricted right to lease the lands for oil and gas purposes and to receive the income and rentals, but if production was had all parties were to share therein as long as Emma should live and thereafter to be divided among the five children. Emma agreed she would not sell or incumber the land but would keep the same intact, except on conditions not necessary to detail. On April 12, 1949, John Woelk died, leaving as his only issue his son John Woelk, Jr., and his daughter Mary Klink. In July and October, 1949, leases were made of parts of the land by Emma Woelk in which some of her children joined or ratified upon agreement for a division of bonus money paid, details of which need not be noticed. Although not expressly stated, the cause for commencing the present action was that prior to its institution one Reed desired to lease for oil and gas purposes three tracts containing 400 acres, delay rentals to be $1.00 per acre, the lease to cover the interest of all parties, and to pay Emma Woelk the sum of $5.00 per acre, provided that George Woelk, Amelia Teppe, Leila Shawhan, John Woelk, Jr., and Mary Klink join in the execution of the leases. John Woelk, Jr., and Mary Klink refused to join and Leila Shawhan and Amelia Teppe refused to join unless they received a part of the bonus money.

Insofar as need be set forth the trial court answered the questions submitted to it and rendered judgment that Emma E. Woelk did not have the sole right under the will and agreement of October 8, 1947, to lease the lands for oil and gas purposes and any lease executed by her would not include the mineral rights of the contingent and vested remaindermen; that by the will she was denied the right to mortgage or incumber the land; that John Woelk, Jr., and Mary Klink were not bound by the agreement of October 8, 1947, and that Leila Shawhan, Amelia Teppe, George Woelk and Mary Woelk and their issue, if any, both known and contingent and Emma Woelk, John Woelk, Jr., and Mary Klink have the right, power and authority to lease all of the land for oil and gas purposes.

In due time Emma Woelk, Leila Shawhan, Amelia Teppe and Mary Woelk perfected their appeal to this court. There is no cross-appeal.

Although appellants specify error in other particulars, in their brief they state that the sole question to be determined is whether, under the will, Emma Woelk, owner of the life estate with power of disposal, has the sole right to lease the lands for oil and gas purposes and that is the only question we shall discuss.

Directing attention to the rule that a testator's intention must be gathered from the four corners of the will and that all parts thereof are to be given effect (see cases collected in West's Kan. Dig., Wills, §§ 440, 470, and Hatcher's Kan. Dig., Rev. Ed., Wills, §§ 107, 108), appellants contend that it is clear the testator's paramount concern was to provide for the comfort of his widow, and that he intended she should have the fullest possible dominion over the property and that no other construction is possible in view of the words "with full power to sell and convey said real estate and to execute and deliver good deeds of conveyance for the same." Were the language of the will limited to the first two sentences of "Clause Three" we would agree. But the very rule relied on by the appellants demands that the remaining language be considered. The third sentence reads, "However, she shall not have the power to mortgage or incumber any of said real estate." While appellants concede that an oil and gas lease is an incumbrance on real estate (*Linscott v. Moseman,* 84 Kan. 541, 114 Pac. 1088, and *Haggart v. Wheeler, et al.* 116 Kan. 702, 229 Pac. 357) they direct attention to the rule stated in *Bullock v. Wiltberger,* 92 Kan. 900, 142 Pac. 950:

"Sometimes technical rules must be applied because the intention is obscured by vague or doubtful expressions, but such rules of construction ought never to be resorted to where their application defeats the manifest intention of the testator." (Syl. ¶ 2.)

And they argue that where the testator expressed himself in his will in specific language that general language should not be construed so as to be inconsistent with the specific language, and that in line with the rules of construction mentioned, the testator, in providing that his widow should not have the power to "mortgage or incumber" the lands, was thinking in terms of security transactions such as mortgages, trust deeds and liens through which she might lose the lands, and that to hold the testator's use of the word "incumber" embraces an oil and gas lease is inconsistent with his evident intent that the real estate was to serve as the source of his widow's livelihood, and the word "incumber" as used in the will should not be expanded to its technical meaning so as to include

an oil and gas lease, but should be restricted to security transactions. Appellants also direct attention to the fact there is no express restriction on an oil and gas lease and stating that the appellees argued below that such a lease would constitute waste as against them, contend that although under *Burden v. Gypsy Oil Co.,* 141 Kan. 147, 40 P. 2d 463, such would be the case if the widow's right was a bare life estate, such is not true as to Emma Woelk who has a life estate with full power of disposal, and our attention is directed to authorities such as *Stanolind Pipe Line Co. v. Ellis,* 142 Kan. 102, 45 P. 2d 846, holding that one having a power of disposal may dispose of less than the whole fee.

In our opinion the rule of the last case is not applicable here for the reason that in the Ellis case the power of disposal was unrestricted while in the instant case there is a restriction which cannot be ignored.

Appellants' argument that the word "incumber" is not to be construed as covering anything but a so-called security transaction is not convincing to us. The testator covered security transactions when he used the word "mortgage." He did not say "mortgage and incumber" but used the words in an alternative way, and by use of "incumber" he meant something other than and different from "mortgage." Incumber is not such a word that it has ordinary meaning at one time and technical meaning at another. In Webster's New International Dictionary (2nd Ed.) the word "incumber" is said to mean the same as "encumber" and the latter word is defined "to place a burden upon; esp., to load with debts, or other legal claims; . . ." and encumbrance is defined "a burden or charge upon property; a claim or lien upon an estate, which may diminish its value; specif., any interest or right in land existing to the diminution of the value of the fee, but not preventing the passing of the fee by conveyance." The above definitions vary little from that contained in *Clark v. Fisher,* 54 Kan. 403, 38 Pac. 493, and approved in *Haggart v. Wheeler, et al.,* supra, *i. e.*:

"Incumbrance—Definition. An incumbrance may be defined to be 'every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance.'

"Lease. An outstanding lease is an incumbrance." (Syl. ¶¶ 1, 2.)

It is noted that in the Haggart case the lease involved was an oil and gas lease.

When we read Clause Three in its entirety and give force and meaning to all of its language, we have no difficulty in holding, as the trial court did, that the testator intended that his wife should not execute any oil and gas lease on his real estate.

Notwithstanding their statement that the only question for determination is the sole right of Emma Woelk to execute oil and gas leases, appellants say that under the agreement of October 8, 1947, heretofore mentioned, Emma Woelk has the right to execute oil and gas leases covering the interest of George Woelk. In a memorandum decision the trial court held that under the will the five children were contingent beneficiaries and appellants concede that is correct under *Bullock v. Wiltberger*, supra. Such being the case, the agreement of October 8, 1947, bound the five children only conditionally. Their rights do not vest until the remarriage of Emma Woelk or her death. Actually John Woelk died after the agreement was made and his issue, John Woelk, Jr., and Mary Klink, and any other issue whose title may subsequently come into being, not being parties to the agreement, are not bound by it whether it be said their interests are contingent or vested. Without further statement it is clear that under the agreement Emma Woelk does not have sole power to execute oil and gas leases. Whether the agreement gave Emma Woelk the right to execute an oil and gas lease covering such interest as George Woelk had is not determinative of the question presented by the appeal and will not be further discussed.

The judgment of the trial court that Emma Woelk did not have the sole right to execute oil and gas leases on lands devised under her deceased husband's will is affirmed.