## No. 39,461

NATIONAL BANK OF TULSA, a corporation, *Appellee*, v. RUTH WARREN, as County Treasurer of Pratt County, Kansas; PATRICIA HANNIGAN, as Register of Deeds of Pratt County, Kansas, and the BOARD OF COUNTY COMMISSIONERS of the County of Pratt, State of Kansas, *Appellants*.

(279 P. 2d 262)

Opinion filed January 22, 1955.

*Thomas M. Evans*, assistant attorney general, argued the cause and *Harold R. Fatzer*, attorney general, and *Eldon L. Meigs*, county attorney, were with him on the briefs for the appellant.

*Richard Barrett*, of Pratt, argued the cause and *George Barrett*, of Pratt, was with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover taxes paid under protest. Judgment was for plaintiff overruling defendants' demurrer to the petition. The defendants have appealed.

The petition was in two causes of action. They each raise like

questions of law, so the facts with relation to the first one shall be stated.

The petition stated first the incorporation of plaintiff and the identity of the defendant officials; that on September 10, 1953, plaintiff loaned the Oil Equities, Inc., an Oklahoma corporation, $1,500,000, and to secure the loan the Oil Equities, Inc., assigned to plaintiff the "production payment from certain oil and gas leases affecting and pertaining to lands in Barton, Graham, Pratt, Rice, Rooks and Russell Counties, Kansas." A copy of the assignment was attached.

The petition then alleged that after the execution and delivery of the assignment it was tendered to the register of deeds of Pratt county for filing and recording, and was recorded; that when the assignment was tendered to the register of deeds that official refused to file and register it until a mortgage registration fee in the sum of $1,250 was paid pursuant to the provisions of G. S. 1949, 79-3102; that on September 24, 1953, plaintiff did pay such sum in order to secure such filing and notified the defendant officials of the unlawful demand and protested such payment. A copy of the protest was attached.

The petition then alleged that the $1,250 was then paid by the register of deeds to the defendant county treasurer and was being held by that official for distribution; that the assignment was, for the purpose of the mortgage registration act, at the time of its execution and its filing concerned solely with and pertaining to personal property; that the Oil Equities, Inc. had never at any time owned any real estate within the terms of the assignment; that the mortgage registration fee was not chargeable to it by reason of the fact that G. S. 1949, 79-3102, referred to mortgages of real property, while the instrument pertained to an assignment of production payments and covered personal property; that for the reason stated the fee demanded was illegal and void. Judgment was prayed for $1,250.

The second cause of action was substantially identical.

The instrument, a copy of which was attached to the petition, was entitled "Collateral Assignment of Production Payment." It first recited the loan by plaintiff to Oil Equities, Inc. of $1,500,000, and the terms of its payment. The instrument then recited the reservation of the production payment, this production payment to be without diminution on account of certain taxes, and free and

clear of all development, operating, production and other costs and payable out of 80 percent of all oil, gas, casinghead gas and/or hydrocarbons produced and to be produced to the credit of the interests in oil and gas leases; that in consideration of the making of the loan for the purpose of securing payment of the note, the assignor granted, bargained, sold, conveyed and assigned all benefits and sums of money to accrue under the reservation of production payments to plaintiff. The instrument then recited how payments should be handled.

The protest, copy of which was attached, referred to the assignment and stated that the production payments consisted of payments out of a portion of the oil and gas produced from certain leases; that the register of deeds had demanded the payment in question and had refused to register the instrument without such payment, and as a result plaintiff had paid the tax under protest. Certain authorities were cited, which plaintiff claimed sustained its position that the production payments were not real estate.

The defendants demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action in favor of plaintiff and against defendants. This demurrer was overruled —hence this appeal.

The sole specification of error is that the trial court erred in overruling the demurrer.

The defendants state the questions to be:

"1. Is the 'Collateral Assignment of Production Payment' a mortgage of an interest in an oil and gas lease?

"2. Is the 'Collateral Assignment of Production Payment' a mortgage of real estate within the 'definition thereof contained in the Revised Statutes of 1923,' said definition now appearing as G. S. 1949, 77-201 (8th)?

"3. Is an oil and gas lease or an interest therein entitled to record as an interest in real property under G. S. 1949, 67-221?

"4. If the 'Collateral Assignment of Production Payment' is not in fact a mortgage within G. S. 1949, 67-221, should it be entitled to recording in the real estate records?"

The sections under which defendants claim plaintiff should pay the tax are G. S. 1949, 79-3101 and 79-3102. They provide as follows:

"The words 'real property' and 'real estate' as used in this act, in addition to the definition thereof contained in the Revised Statutes of 1923, shall include all property a conveyance or mortgage of which is entitled to record as real property or interest therein under the laws of this state. The words 'mortgage

of real property' shall include every instrument by which a lien is created or imposed upon real property, notwithstanding that the debt secured thereby may also be secured by a lien upon personal property. An executory contract for the sale of real estate, or a bond for a deed, the complete performance of which is deferred for a longer period than ninety days from its execution, under which the grantee or vendee is entitled to the possession of such real estate, by the terms of which the grantor holds the legal title as security for the unpaid purchase money, shall for the purpose of this act be treated as a mortgage of real property to secure the balance of the unpaid purchase price." (G. S. 1949, 79-3101.)

"Before any mortgage of real property, or renewal or extension of the same shall be received and filed for record on and after the first day of March, 1925, there shall be paid to the register of deeds of the county in which such property or any part thereof is situated, a registration fee for each one hundred dollars and major fraction thereof, of the principal debt or obligation which is secured by such mortgage, the sum of 25 cents; that no registration fee whatsoever be paid, collected or required for or on any mortgage or other instrument, given solely for the purpose of correcting or perfecting a previously recorded mortgage or other instrument, or for the purpose of providing additional security for the same indebtedness, where the registration fee herein provided for has been paid on the original mortgage or instrument: *Provided, however,* That the register of deeds shall receive no additional fees or salary by reason of the receipt of fees as herein provided: *Provided further,* That after the payment of the registration fees as aforesaid the mortgage and the note thereby secured shall not otherwise be taxable." (G. S. 1949, 79-3102.)

The appeal turns on whether the instrument in question creates a lien on real estate.

The first question to be decided is whether the interest in question is a mortgage. It seems clear it was given to secure the payment of the debt, that is, the $1,500,000 borrowed. In the instrument we find such statements as:

"Now therefore, in consideration of the making of the loan aforesaid and for the purpose of securing the prompt and punctual payment of said note

. . .

"The assignor also for the purpose of securing indebtedness aforesaid . . ."

In 6 C. J. S. 1049 the rule is stated:

"An assignment of property as security for a debt is usually regarded as constituting a mortgage of the property."

This instrument is a mortgage. Is it a mortgage on real estate?

G. S. 1949, 79-3101 is Section 1 of Chapter 273 of the Laws of 1925. It was a companion act to Chapter 277 of the Laws of 1925, later amended, and appearing as G. S. 1949, 79-3108. Together they were part of a plan to cause more so-called intangibles to

be put on the tax rolls at a somewhat lower rate than other property. Obviously the simplest means of collecting a tax on mortgages was to provide that the tax should be collected when the instrument was offered for recording. It was not intended that the act should apply to other than mortgages on real estate. Hence the act contains a definition of real estate for the purposes of the act. It was defined as:

"All property a conveyance or mortgage of which is entitled to record as real property or interest therein under the laws of this state."

The legislature had authority to classify certain property for the purpose of taxation. (See Constitution of Kansas, Art. 11, Sec. 1.) It did so in these acts. This definition sends us to an examination of G. S. 1949, 67-221, as it was in 1925 when Chapter 273 was enacted. It provided:

"Every instrument in writing that conveys real estate, or whereby any real estate may be affected, proved or acknowledged, and certified in the manner hereinbefore prescribed, may be recorded in the office of register of deeds of the county in which such real estate is situated: . . ."

This section was originally Section 19, G. S. 1868. As much of it as is quoted above contained the same provisions as when it was enacted in 1868. The purpose of the statute was and is to impart notice to those interested in any tract of real estate.

The section speaks of any instrument in writing that conveys real estate. That, it seems, should not be too difficult to define. The section then speaks of any instrument whereby any real estate may be affected. This should be given a broader interpretation than the former. That the assignment with which we are dealing is an instrument goes without saying. Does it affect real estate? It sprang from and owed its existence to oil and gas leases in several counties. We have held that an oil and gas lease was such an instrument as to come within the terms of G. S. 1949, 67-221. (See *Derby Oil Co. v. Bell*, 134 Kan. 489, 7 P. 2d 39; also *Mills and Willingham, Law of Oil and Gas*, 236.) In the latter it is said:

"Subject to a number of exceptions referred to in this chapter it may be stated as a general proposition that conveyances of mineral, conveyances or assignments of rents and royalties to accrue, oil and gas leases, assignments and subleases thereof are all conveyances of interest in land and as such are within the recording acts."

(See, also, *Riverview State Bank v. Ernest*, 198 Fed. 2d 876; also *Ray v. Brush*, 112 Kan. 110, 210 Pac. 660; and *Gates v. Syndicate Oil Corp.*, 132 Kan. 272, 295 Pac. 649.) We have examined

the authorities cited and relied on by plaintiff where we have held an oil and gas lease to create personal property only and conveys no interest in the land. These cases are not in point here. The question with which we are dealing is governed entirely by the statutes we have discussed and the cases interpreting them. From what has been said, the demurrer of the defendants to plaintiff's petition should have been sustained.

The judgment of the trial court *is* reversed, with directions to sustain defendants' demurrer.

WEDELL and PRICE, JJ., dissent.

ROBB, J., not participating.