No. 47,220

NATHALIE INGRAM, *Plaintiff-Appellee,* v. BILLY L. INGRAM, *Defendant,* and THE HOME STATE BANK, Russell, Kansas, *Intervenor-Appellant.*

(521 P. 2d 254)

Opinion filed April 6, 1974.

*Michael S. Holland,* of Holland and Holland, of Russell, argued the cause, and *Herbert N. Holland,* of the same firm, was with him on the brief for the intervenor-appellant.

*Mark Arthur, Jr.,* of Thompson, Holland and Arthur, of Russell, argued the cause, and *Marvin E. Thompson* and *Clifford R. Holland, Jr.,* of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This case involves a dispute as to the priority of two liens asserted against an oil and gas leasehold interest. The essential facts in the case are not in dispute and are as follows: The plaintiff-appellee, Nathalie Ingram, is the former wife of the defendant, Billy L. Ingram. On October 8, 1968, plaintiff, Nathalie

Ingram was granted a divorce. As a part of the decree Billy L. Ingram was ordered to pay alimony in the amount of $500 per month and child support in the amount of $100 per month. The property settlement agreement and the decree approving the same awarded to Billy L. Ingram an oil and gas lease free and clear of the claims of Nathalie Ingram. This lease covered a tract of land in Russell county and will be referred to in this. opinion as the Solbach lease. On August 18, 1969, Billy L. Ingram, obtained a loan and executed a promissory note in the amount of $12,500 to the Home State Bank of Russell, the intervenor-appellant. In order to secure the loan Billy L. Ingram assigned to the Home State Bank his undivided ¾ths working interest in the Solbach lease. At that time Billy L. Ingram and the Home State Bank orally agreed that the Solbach lease was assigned to secure and mortgage all indebtedness incurred or *to be incurred* by Billy L. Ingram by future advances made to him by the bank and that the bank had no obligation to reassign the Solbach lease back to Mr. Ingram until all of his indebtedness to the bank was paid in full. This assignment was filed as an instrument affecting real estate for record in the office of the register of deeds of Russell county on August 29, 1969. The assignment of the oil and gas lease, although absolute in form, was stamped by the register of deeds to reflect the amount of the indebtedness which the assignment secured, $12,500. A mortgage registration fee calculated on the basis of a $12,500 loan was paid. On October 11, 1969, the Home State Bank loaned Billy L. Ingram additional moneys and the $12,500 note was renewed and incorporated in a new note in the amount of $36,400. It was orally agreed that the $36,400 indebtedness was to be secured by the Solbach lease and by other oil and gas leases assigned to the bank. Nathalie Ingram had no actual knowledge of these financial transactions between Mr. Ingram and the bank.

The controversy arose in this case when Billy L. Ingram defaulted on his alimony and child support payments. On January 23, 1973, Nathalie Ingram levied execution on the Solbach lease in order to collect delinquent alimony and child support payments in the amount of $6,529.50 with interest. It is undisputed that all of the delinquencies in alimony and child support payments arose subsequent to the execution of the second promissory note of Billy L. Ingram on October 11, 1969. The attempt of Nathalie

Ingram to levy execution and sell the interest of Billy L. Ingram in the Solbach lease prompted the Home State Bank to take action to protect its security interest in the Solbach lease. On March 14, 1973, the Home State Bank filed motions in the divorce case to intervene and to enjoin the sale of the Solbach lease. The bank sought to have its mortgage lien declared superior and prior to any lien the plaintiff, Nathalie Ingram, might have on the Solbach lease as a judgment creditor. It was Nathalie Ingram's position that assignments of oil and gas leasehold interests for security purposes are within the compass of the Uniform Commercial Code (K. S. A. 84-1-101 through 84-10-102); that the assignment of the Solbach lease made no express provision to secure future advances after the original loan of August 18, 1969, in the amount of $12,500 was made; hence the oral agreement that the lease assignment was to secure future advances was null and void. It was the position of the Home State Bank, as intervenor, that the assignment of the Solbach oil and gas lease for security purposes is excluded from the application of the Uniform Commercial Code by the provisions of K. S. A. 84-9-104 (*j*); and that its assignment of the Solbach lease constitutes a first and prior mortgage or security interest entitling the bank to all proceeds derived from the sale of the Solbach lease necessary to pay the entire indebtedness of Billy L. Ingram to the bank.

The district court held that the Uniform Commercial Code applies to the assignment of an oil and gas leasehold interest given as security for future advances. The trial court reasoned that although K. S. A. 84-9-104 (*j*) excludes from the application of the code instruments creating or transferring an interest in or lien on real estate, such provision does not exclude oil and gas leasehold interests. The trial court further held that because of the provisions of the Uniform Commercial Code, the assignment of the Solbach lease secured only the original indebtedness of $12,500 and therefore the Home State Bank has priority only as to the unpaid balance of that indebtedness in the amount of $5,585.12. The trial court then found the bank had a prior lien on the Solbach lease only to the extent of $5,585.12, holding that the judgment execution lien of Nathalie Ingram was superior as to any amount in excess of that figure. The Home State Bank has appealed to this court from that judgment.

The primary issue to be determined in this case is whether or not the assignment of an oil and gas lease for security purposes is subject to the provisions of the Uniform Commercial Code. If the provisions of the code are applicable then it would follow that under the provisions of 84-9-204 (5) the bank's security interest for future advances was not perfected since the assignment of the Solbach lease did not specifically provide for securing future advances as well as present advances. Furthermore under 84-9-301 a "lien creditor" is fully protected from unperfected liens. On the other hand if the provisions of the Uniform Commercial Code are not applicable to the assignment of an oil and gas leasehold interest for security purposes then traditional principles of law pertaining to real estate mortgages should be applied.

The issue presented is one of first impression in this state since the Uniform Commercial Code became effective in Kansas on January 1, 1966. In order to determine the issue presented it is necessary for us to construe K. S. A. 84-9-104 (*j*) which provides as follows:

"84-9-104. Transactions excluded from article. This article does not apply.

. . . . . . . . . . . . . . .

"(*j*) except to the extent that provision is made for fixtures in section 84-9-313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder; . . ."

Does the assignment of an oil and gas leasehold interest for security purposes fall within this exclusion? Is an oil and gas lease an interest in or lien on real estate within the meaning of the section? The determination of these issues is not without difficulty. We have stated in many cases that an oil and gas lease does not create any present vested estate in the nature of title to the land which it covers or to the oil and gas in place. It merely conveys a license to enter upon the land and explore for such minerals and if they are discovered to produce and sever them. We have further declared that an oil and gas leasehold interest is personal property—an incorporeal hereditament—a profit *a prendre*. (*Connell v. Kanwa Oil Inc.*, 161 Kan. 649, 170 P. 2d 631, citing many Kansas cases to that effect.) The Kansas courts, like those of other jurisdictions, have found some difficulty in fitting the interest of an oil and gas lessee into the traditonal common-law classifications relating to ordinary surface interests in land. It seems to be agreed that an oil and gas leasehold interest is a property right, but there still remains wide disagreement among the various jurisdictions of

this country as to whether it is real property or personal property. A number of our opinions state categorically in general language that an oil and gas lease is personal property. *(Burden v. Gypsy Oil Co.,* 141 Kan. 147, 40 P. 2d 463; *Connell v. Kanwa Oil Inc.,* supra; *Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899.) In *Western Natural Gas Co. v. McDonald,* 202 Kan. 98, 446 P. 2d 781, we qualify the rule by stating that the rights created by oil and gas leases covering land in Kansas constitute intangible personal property *except when that classification is changed for a specific purpose by statute.*

K. S. A. 79-1501 provides that oil and gas leases on lands in this state shall be considered as tangible personal property for the purposes of the inheritance tax act. Oil and gas leases are considered to be personal property for ad valorem tax purposes. (K. S. A. 79-329.)

In *Beren v. Marshall Oil & Gas Corp.,* 122 Kan. 134, 251 Pac. 192, we declared that R. S. 60-3126 making a judgment a lien on the real esate of the debtor within the county does not apply to an ordinary oil and gas lease since an oil and gas lease is an incorporeal hereditament and not real estate within the meaning of that statute. In 1907 we held in *Oil Co. v. McEvoy.,* 75 Kan. 515, 89 Pac. 1048, that one who performs labor in drilling an oil and gas well could not obtain a mechanics' lien for such labor which will attach to the leasehold interest or to personal property belonging to the lessee and left upon the land. The basis of the rule was that an oil and gas leasehold interest is not an interest in land within the contemplation of the mechanics' lien statute. This rule was changed by the legislature by the adoption of K. S. A. 55-209 in 1923. It provided for a mechanics' lien for labor or materials on oil or gas leasehold interests. The legislature at the same time adopted K. S. A. 55-210 which states that all liens and mortgages on leaseholds for oil and gas purposes shall be enforced and foreclosed in the same manner as may be provided by law for enforcing liens and mortgages against real estate. The effect of these statutes was to declare that an oil and gas lease is to be treated as real property for purposes of enforcing mechanics' liens and other liens.

In other fields of the law our statutes and court decisions have considered oil and gas leasehold interests as realty for certain purposes. We have held that a contract to execute or assign an oil and

gas lease is within the contemplation of the statute of frauds and therefore to be valid, such a contract must be in writing. (*Robinson v. Smalley,* 102 Kan. 842, 171 Pac. 1155; *White v. Green,* 103 Kan. 405, 173 Pac. 974; *Riffel v. Dieter,* 159 Kan. 628, 157 P. 2d 831; *Gates v. Syndicate Oil Corp.,* 132 Kan. 272, 295 Pac. 649.) We have also departed from some of our general statements that an oil and gas lease is personal property and not an interest in land in cases where an outstanding oil and gas lease has had the effect of clouding the title to real estate. In *Haggart v. Wheeler et al.,* 116 Kan. 702, 229 Pac. 357, we declared that the fee owner of land could quiet his title against the owner of an oil and gas leasehold interest. It is obvious from the opinion that we considered an oil and gas lease to be an "incumbrance" upon the land which we defined to be "any right to, *or interest in,* land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance." More recently in *Woelk v. Woelk,* 174 Kan. 130, 254 P. 2d 297, we held unequivocally that an oil and gas lease is an incumbrance upon the real estate described therein and that the owner of a life estate had no right to execute an oil and gas lease on the real estate during her lifetime. It is difficult to see how an oil and gas lease can be an incumbrance on real estate as we have defined it without being a right or interest in the real estate.

There are other areas where the legislature has specifically included oil and gas leasehold interests within the category of real property. An oil or gas lease is real property for the purpose of setting the venue of actions concerning real property under the provisions of K. S. A. 1973 Supp. 60-601. An oil or gas lease is considered real property in the statutory ejectment action provided by K. S. A. 60-1001. Oil and gas leases are treated as real property for the purpose of execution and sale to satisfy a judgment under the provisions of K. S. A. 60-2401.

It is obvious from this analysis of the Kansas statutes and decisions that in this state an oil and gas lease is a hybrid property interest. For some purposes an oil and gas leasehold interest is considered to be personal property and for other purposes it is treated as real property. Our problem in this case is to determine how to treat an assignment or mortgage of an oil and gas leasehold interest under the recording statutes which govern security transactions. We have concluded that the legislature has determined

that oil and gas leasehold interests are to be treated as *real property* under the statutes pertaining to the recording of instruments conveying or affecting real estate. We have already mentioned K. S. A. 55-210 pertaining to the enforcement of all kinds of liens and mortgages on leaseholds for oil and gas purposes. They are to be enforced and foreclosed in the same manner as may be provided by law for enforcing liens and mortgages against real estate except that after sale of the property there shall be no redemption. Furthermore in 1953 the legislature by amendment of G. S. 1949, 67-221 specifically included oil and gas leases under the statutes which govern the recording of instruments affecting real estate. K. S. A. 58-2221 provides as follows:

"58-2221. Recordation of instruments conveying or affecting real estate; duties of register of deeds. Every instrument in writing that conveys real estate, *any estate or interest created by an oil and gas lease,* or whereby any real estate may be affected, proved or acknowledged, and certified in the manner hereinbefore prescribed, may be recorded in the office of register of deeds of the county in which such real estate is situated: . . ." (Emphasis supplied.)

K. S. A. 58-2222 provides in substance that an oil and gas lease when recorded shall from the time of filing the same with the register of deeds for record impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice.

In 1955 in *National Bank of Tulsa v. Warren,* 177 Kan. 281, 279 P. 2d 262, this court held that an assignment of an oil and gas leasehold interest for security purposes should be recorded in compliance with the real property recording acts and that it fell within the category of a mortgage on real estate so as to be subject to the mortgage registration fee under the provisions of G. S. 1949, 79-3101, *et seq.* In arriving at this conclusion the court relied upon the provisions of G. S. 1949, 67-221 which are discussed above. The court also relied in part upon *Riverview State Bank v. Ernest,* 198 F. 2d 876, 34 A. L. R. 2d 892, where the United States Court of Appeals for the 10th Circuit, held that a mortgage covering an oil and gas leasehold in Kansas which was recorded in the real estate mortgage records of the county where the property was situated, but not filed and entered upon the chattel mortgage records, fixed and fastened a lien upon the property effective from the date of recording and filing of the mortgage as against a subsequently appointed trustee in bankruptcy. Unfortunately this clear statement of the law was

muddied in 1962 by *Shields v. Fink, Executrix,* 190 Kan. 17, 372 P. 2d 252. In that case Shields sought to foreclose an alleged mortgage by a decedent of a ⅟₁₆th interest in an oil and gas lease. The defense was that the alleged mortgage had not been filed as required by the chattel mortgage statute. In fact the assignment of the oil and gas lease involved was not recorded at all, either as a real estate mortgage or as a chattel mortgage. This court held in sustaining the dismissal of the case that at best the unfiled mortgage created only an equitable lien and that only "specific liens" could be enforced outside of the probate proceeding with respect to the deceased mortgagor. The court stressed the chattel nature of an oil and gas lease by stating that an oil and gas lease conveys no interest in land but is merely a license to explore and is personal property, an incorporeal hereditament—a profit *a prendre.* The court then made the broad statement that:

"Any mortgage on the decedent's interest in the oil and gas lease in question, which is personal property, is subject to the Kansas chattel mortgage statute, G. S. 1949, 58-301, . . ." (p. 26.)

The opinion in *Shields* did not cite *National Bank of Tulsa v. Warren,* supra, where we held to the contrary. Furthermore the court did not mention or cite 55-210 or 58-2221. The statement made in *Shields* was not necessary for a decision in the case and the language quoted above in our judgment was clearly in error. We reaffirm out position in *National Bank of Tulsa v. Warren,* supra, and specifically overrule any statements to the contrary in *Shields.*

We therefore hold that a mortgage or assignment of an oil and gas leasehold interest for security purposes which is recorded in the real estate mortgage records of the county wherein the property is situated fixes a lien upon the oil and gas leasehold effective from the filing of the same and that filing imparts notice to all persons of the contents thereof under the provisions of K. S. A. 58-2222. The result which we have reached is also consistent with out holding in *Troxell v. Cleveland Oil Co.,* 145 Kan. 658, 66 P. 2d 545, where we held that under 55-210 it was the intention of the legislature to place liens on oil and gas leaseholds in the same status as liens on real estate generally, save as to rights of redemption as provided in the last sentence of that statute.

We also believe that the statutes and the cases just cited should be utilized in interpreting K. S. A. 84-9-104 (*j*) which declares that the Uniform Commercial Code does not apply to the creation or

transfer of an interest or lien on real estate, including a lease or rents thereunder. We hold that a mortgage or assignment of an oil and gas leasehold for security purposes is to be treated as a real estate mortgage and that such instruments are not controlled by the provisions of the Uniform Commercial Code. In arriving at this conclusion we have also considered the other provisions of the Uniform Commercial Code where oil and gas is specifically mentioned. We note for example K. S. A. 84-9-204 which provides in substance that the debtor has no rights in oil, gas or minerals *until they are extracted*. This provision seems clearly intended to keep under the real estate recording laws any type of security interest relating to *unextracted* oil and gas. The oil and gas situation presents an unusual problem. Oil and gas are considered to be a part of the real estate until they are extracted; then they immediately change from realty to personalty. It is upon extraction that the law pertaining to security interests in personal property comes into play.

We have also not overlooked the provisions of K. S. A. 84-9-203 which provides in substance that a security interest is not enforceable against the debtor or third party unless the debtor has signed a security agreement which contains not only a description of the oil and gas collateral but also a description of the land concerned. This provision must be read along with 84-9-204 which has just been discussed above. The section is not really pertinent on the issue of whether or not a mortgage or assignment of an oil and gas leasehold is excluded from the operation of the Uniform Commercial Code by virtue of the provisions of 84-9-104 (*j*). From what we have stated above and on the basis thereof we hold that the assignment of the oil and gas lease for security purposes by Billy L. Ingram to the Home State Bank in this case was not subject to the provisions of the Uniform Commercial Code and that it must be treated on the same basis as a real estate mortgage in determining the priority of liens in this case.

We now turn to the question of whether or not the assignment of the Solbach lease for security purposes executed on August 18, 1969, secured future advances made to Billy L. Ingram by the Home State Bank. In *Potwin State Bank v. Ward*, 183 Kan. 475, 327 P. 2d 1091, we held that a mortgage given to secure future advances is valid and will be judicially enforced. We further held that advances made from time to time under such a mortgage, at least if made pursuant to an agreement to make them, have priority

over liens which attach after the recording of the mortgage but before the making of the advances. We further declared that advances made under a recorded mortgage given to secure future advances will not be denied priority in lien merely because the intervening encumbrancer could not have determined from the mortgage, without extraneous inquiry, the true amount of the indebtedness or advances secured thereby. Under the undisputed facts in this case the sole advancement made by the bank to Billy L. Ingram was made on October 11, 1969, approximately three years prior to plaintiff's judgment lien of January 23, 1973, which lien did not attach either before the recording of the Solbach lease assignment or the advancement was made by the bank. Here the assignment of the Solbach lease was absolute on its face, although given only for security purposes. Such assignment must be treated as an equitable mortgage and enforced as such in accordance with the actual agreement of the parties. (*Berger v. Bierschbach,* 201 Kan. 740, 443 P. 2d 186; *Marshall v. Bailey,* 183 Kan. 310, 327 P. 2d 1034; *Hess v. Hess,* 164 Kan. 139, 187 P. 2d 383.) Since the assignment of the Solbach lease was recorded it imported constructive notice to all persons who might be affected by it. K. S. A. 58-2222.)

It should also be stated that under traditional real estate mortgage law a judgment creditor is not considered to be a purchaser or subsequent mortgagee for value and cannot obtain a greater right in property taken on execution than that owned by the judgment debtor. An unrecorded mortgage is valid as between the parties thereto. (K. S. A. 58-2223.) Since an attaching creditor of the mortgagor stands in his shoes, an unrecorded mortgage may be enforced against the attaching creditor. (*Culp v. Kiene,* 101 Kan. 511, 168 Pac. 1097; *Julian v. Oil Co.,* 83 Kan. 440, 111 Pac. 445; *N. W. Forwarding Co. v. Mahaffey, Slutz & Co.,* 36 Kan. 152, 12 Pac. 705; *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.,* 184 Kan. 202, 336 P. 2d 463.) The same rule has been applied to an unrecorded assignment of an oil and gas lease given as security for a loan. (*Bennett v. Christy,* 137 Kan. 376, 20 P. 2d 813.) From these decisions it is clear to us that the assignment of the Solbach leasehold interest here to the bank for security purposes secured future advances and may be enforced against plaintiff, an attaching creditor. Therefore the claims of the bank for the indebtedness owed to it by Billy L. Ingram are prior and superior to the claims of Nathalie Ingram as a judgment creditor.

There has been an issue raised on this appeal by the plaintiff-appellee that the Home State Bank is barred from claiming that its mortgage secured a larger amount that the original $12,500 on which the mortgage registration fee was paid. The plaintiff Nathalie Ingram takes the position that because the Home State Bank did not prove the mortgage registration fee had been paid on the advance made on October 11, 1969, the assignment of the Solbach lease was not admissible in evidence and the court lacked jurisdiction to enforce it. We have declared that the registration fee required to be paid on mortgages of real property before they can be recorded is essentially a tax. Failure to pay the registration fee, or tax does not vitiate an instrument given as security, even though its enforcement as a mortgage may not be entered by a court until the fee has been paid. (*Berger v. Bierschbach,* supra.) In this case the assignment of the Solbach lease was admitted into evidence by stipulation of the parties and no issue in regard to the payment of the registration tax was raised below in the trial court. The Home State Bank argues here that since the point was not raised below it had no opportunity to show in fact that the entire registration fee had been paid on the assignment of other oil and gas leases as security when additional funds were loaned by the bank on October 11, 1969. Under the circumstances we will not consider the point on this appeal, since it was not heretofore presented to the trial court. (*Thompson v. Meyers,* 211 Kan. 26, 505 P. 2d 680.)

For the reasons set forth above the judgment of the trial court is reversed and remanded with instructions to enter judgment in favor of the intervenor, the Home State Bank, determining that the lien of the Home State Bank under the assignment of the Solbach lease is prior and superior to the judgment lien of the plaintiff-appellee, Nathalie Ingram.