THE FRANKLIN LAND COMPANY v. THE WEA GAS, COAL AND OIL COMPANY.

1. HOMESTEAD — *Lease* — *Joint Consent.* Joint consent of husband and wife is necessary to give validity to a lease of a homestead, when such lease interferes with the occupancy and use of a homestead by the wife.

2. LEASE, *Requiring Joint Consent of Husband and Wife.* A lease of a homestead for a period of twenty-five years, with privilege of prospecting for gas, coal, oil, and other minerals, upon any or all portions of said homestead, at the pleasure of the lessee, and to erect derricks, engine houses, and buildings for storage purposes, if needed, may interfere with the use and occupancy of the homestead by the wife, and therefore requires joint consent of husband and wife to give it validity.

*Error from Miami District Court.*

ACTION to quiet title. Judgment for the defendant *Wea Gas, Coal and Oil Company,* on December 13, 1887. The *Franklin Land Company* brings the case here. The facts are stated in the opinion.

*Mechem & Smart,* for plaintiff in error.

*Sperry Baker,* and *J. A. Hoag,* for defendant in error.

Opinion by STRANG, C.: Action to quiet title. July 23, 1886, Robert Dunn and wife Gertrude were the owners of a tract of eighty acres of land near the city of Paola, in Miami county, which they occupied as a homestead. On that day Robert Dunn leased said land to the Wea Gas, Coal and Oil Company for the period of twenty-five years, with the privilege of renewal, at the expiration of said lease, for another period of twenty-five years, giving said company the right to erect derricks, engine houses, and other buildings necessary for use in drilling and prospecting for gas, coal, oil, and other minerals; for storing the product of its mines; and of excavating mains and laying pipes to conduct its oil and gas over said lands. · March 1, 1887, Robert Dunn and

wife made a contract for the sale of said land to J. L. R. Wadsworth, who afterward assigned said contract to I. N. Boicourt. Dunn and wife afterward, pursuant to said contract, conveyed the premises to said Boicourt, who subsequently conveyed the same to the plaintiff company. The contract from Dunn and wife to Wadsworth, and the assignment thereof by Wadsworth to Boicourt, both recited a lease from Robert Dunn to the Wea Gas, Coal and Oil Company. Boicourt and the plaintiff both knew of the lease by Robert Dunn to the defendant before obtaining any interest in said land. The trial was by the court, which made special findings of fact and law, upon which judgment was rendered in favor of the defendant below. Motion for new trial; motion overruled; to which ruling the plaintiff excepted, and now comes here by his case-made seeking a reversal of the judgment of the district court, and as grounds therefor alleges that said court erred in rendering judgment in favor of the defendant below, when said judgment should have been in favor of the plaintiff below for the relief prayed for. Second, that the court erred in overruling the motion of the plaintiff for a new trial. Tho findings of fact and of law of the trial court are as follows:

"1. On the 23d day of July, 1886, and for a long time prior thereto, Robert Dunn was the owner of the south one-half of the northwest quarter of section 15, in township 17, of range 23, in Miami county, Kansas, except four acres before that time conveyed by said Dunn to the Cordova Glass Company, and one and one-tenth acres conveyed to B. Miller, and the Missouri Pacific railroad right-of-way.

"2. Said Dunn then, and during all the times hereinafter mentioned, was and still is a married man, and the head of a family, occupying said land with his family as a homestead, except that the land mentioned in plaintiff's petition has not been in possession of or occupied by said Dunn or family since the conveyance to Boicourt as hereinafter mentioned.

"3. On the 23d day of July, 1886, said Dunn executed and delivered to the defendant company a written lease, a true copy of which is attached to defendant's answer and marked 'Exhibit A'; and said lease was filed for record on the 27th

day of April, 1887, in the office of the register of deeds of Miami county. Said lease was acknowledged on said 23d day of July, 1886, by said Dunn before George Kingsley, a notary public of said county, but that said certificate of acknowledgment was not indorsed upon or attached to said instrument until long after the delivery thereof, but was made before said lease was filed for record; and Robert H. Balding, president of the Wea Coal, Gas and Oil Company, did not sign said lease until some time after its delivery to defendant by Dunn.

"4. On the 1st day of March, 1887, Robert Dunn and Gertrude Dunn, his wife, executed and delivered to J. L. R. Wadsworth the contract attached to the answer of the defendant herein and marked 'Exhibit B,' and upon the 5th day of March, 1887, said contract was duly acknowledged and was duly recorded in the office of the register of deeds of said Miami county.

"5. On the 9th day of May, 1887, J. L. R. Wadsworth and wife assigned said last-mentioned contract to I. W. Boicourt, as shown in 'Exhibit C,' attached to said answer; said assignment was recorded in the office of the register of deeds of said county on the 13th day of May, 1887. On the 17th day of May, 1887, Robert Dunn and Gertrude Dunn his wife executed and delivered to I. W. Boicourt the deed set forth in 'Exhibit D' of defendant's answer. Said deed was acknowledged May 9, 1887, and recorded in said register's office May 13, 1887.

"6. On the 14th day of May, 1887, said I. W. Boicourt and wife executed and delivered to the plaintiff a deed of general warranty, conveying the land described in plaintiff's petition. Said deed was executed and delivered by and through J. E. Maxwell, as attorney in fact of the said I. W. Boicourt and wife, and was recorded in the office of said register of deeds June 30, 1887. The power of attorney authorizing said Maxwell to execute and deliver said deed was recorded in said office May 13, 1887.

"7. Said Franklin Land Company was organized as a corporation under the laws of the state on the 28th day of April, 1887. The directors of said company at the time of its organization were, and ever since said time have been, L. C. Wasson, I. W. Boicourt, W. C. Bradley, H. P. Faris and L. M. Hair; and the officers of said company then were and still are L. C. Wasson, president; W. C. Bradley, secretary; I. W. Boicourt, treasurer; and the stockholders of said company at and ever since its organization were and are the di-

rectors above named, H. C. Mechem, H. C. Jones and J. E. Maxwell. All of the above-named stockholders were interested in the purchase of the land in controversy except J. E. Maxwell, and contributed toward the payment for the land, said assignment from Wadsworth and wife to I. W. Boicourt having been taken to said Boicourt in trust for the persons (except J. E. Maxwell) who became the stockholders of the said Franklin Land Company. But said J. E. Maxwell was not originally interested in the purchase of said land, and became a stockholder and member of said company after the purchase of said land by Boicourt and the delivery of the deed.

"8. Said J. E. Maxwell acted as, was the agent of said Wadsworth in obtaining the contract from Dunn and wife to said Wadsworth, and acted as the agent of said Boicourt in obtaining a deed to said land from Dunn and wife to said Boicourt.

"9. Within ten days after the execution and delivery of said lease from Dunn to defendant, the defendant entered upon said homestead premises and erected thereon a derrick and placed thereon an engine and other machinery and tools, and then and there commenced boring for gas, coal, oil, and other mineral, and has continued said work at intervals until within one month of the trial of this action, boring to a depth of 550 feet, and has expended in the prosecution of said work from $1,500 to $1,600, and said derrick, engine and other machinery still remain on said premises where originally placed, but are not on any part of the land owned by plaintiff and mentioned in plaintiff's petition, and the defendant has not done any work or act on the land mentioned in said petition under said lease and has not at any time had possession of said premises described in said petition, except as above stated, so that said work is now temporarily suspended.

"10. Said Robert Dunn is a member of said Wea Gas, Coal and Oil Company, and is the owner of said engine and machinery.

"11. At the time of the execution of said lease by said Robert Dunn to the defendant company, said Gertrude Dunn knew of the execution of the same, and did not object to the execution of said lease by said Robert Dunn, and she knew of the work having been done by the defendant on said homestead premises, but did not at any time make any objections thereto.

"12. At the time of the assignment of said contract by

said J. L. R. Wadsworth and wife to said I. W. Boicourt, said Boicourt had actual notice of the existence of said lease and of the entry of defendant company on said homestead premises, and work then performed by them under said lease.

"13. At the time of the execution and delivery of said deed from I. W. Boicourt and wife to the plaintiff, the plaintiff by and through its president and treasurer had actual notice of the execution and delivery of said lease by said Robert Dunn to defendant, and actual notice that defendant had entered upon said homestead premises and there performed work and expended money under said lease.

"14. On the foregoing facts the court finds for the defendant, and against the plaintiff."

### CONCLUSIONS OF LAW.

"Said lease executed and delivered as aforesaid by said Robert Dunn to said defendant company confers upon defendant a lawful right and license to enter upon the premises therein described, for the purpose of drilling, boring and excavating upon and into said land to obtain the oil, gas, coal, and other mineral substances lying under the surface of said soil, for the term of twenty-five years, and under the conditions set out in said lease so far and in such manner as shall not materially or unreasonably interfere with the occupation and use of said premises by said Dunn and family as a homestead, subject however to the limitation that the defendant cannot enter upon the surface of the land purchased and platted by plaintiff into lots and streets, or drill or sink shafts thereon, but is entitled to the gas, coal, oil and other mineral under the surface of said land platted as aforesaid.

"2. Plaintiff is not entitled to the relief prayed for in its petition.

"3. Defendant is entitled to a judgment against plaintiff for its costs herein expended."

The question in this case is raised by the inquiry: Is the lease executed by Robert Dunn, July 23, 1886, to the Wea Gas, Coal and Oil Company valid? If it is, the judgment of the court below should be affirmed. If not, such judgment should be reversed. Section 9 of article 15 of the constitution ordains that a homestead shall not be alienated without the joint consent of the husband and wife, when that relation exists. Section 1 of chapter 38, Compiled Laws of 1879, fol-

lows the above constitutional provision, and is identical with it.   The first question for consideration is, whether a lease, such as was made by Dunn to the defendant company, may be considered an alienation of the homestead or any interest in the same.   This court in *Coughlin v. Coughlin*, 26 Kas. 116, referred to and approved in *Pilcher v. A. T. & S. F. Rld. Co.*, 38 id. 516, held that a lease of a homestead under which the lessee takes possession of the premises in such a way as to interfere with the possession and enjoyment by the wife of the homestead, is such an alienation of the homestead as under the constitution and statute above cited requires joint consent of the husband and wife.   Is the lease under which the defendant claims one that may interfere with the occupancy and use of the homestead by the wife of Robert Dunn?   We think it is.   Under it the defendant may occupy as much of the homestead as he thinks is necessary, to erect thereon derricks and engine houses; to prospect for gas, coal, oil, or any other mineral substance; and if anything valuable is found, to erect buildings in which to store such product.   Under such a lease the defendant has power, should it deem necessary or desirable, to occupy any part or the whole of the Dunn homestead.   Thus, tested by the rule of this court as established by the cases above cited, nothing short of the joint consent of Dunn and wife could render the lease in question valid.   Does the record show such consent? Looking to the findings of fact we fail to discover that there was any consent on the part of Mrs. Dunn, much less a joint consent with her husband.   The court finds that at the time of the execution of said lease by Robert Dunn, his wife Gertrude Dunn knew of the execution of the same, and did not object to the execution thereof.   This does not prove consent.   She was not called upon to object.   It was not a case where silence gives consent.   No presumption from silence can be indulged by the court which affects adversely the rights of the wife in her homestead.   To render such a lease valid

*1. Homestead— lease—joint consent.*

*2. Lease, requiring joint consent of husband and wife.*

it must affirmatively appear that she consented to the making of said lease, and that her consent was a joint consent with that of her husband. But it is asserted that on March 1, 1887, Dunn and wife jointly executed a contract of sale for said premises to J. L. R. Wadsworth, in which they jointly recognized the lease made by Robert Dunn to the defendant company, and thus ratified and jointly consented to such lease. The Wadsworth contract did recite a lease from Dunn to the defendant company, but we are unable to say it was the lease relied upon by the defendant herein. The lease recited in the Wadsworth contract differs very materially in some respects from the lease relied on. The lease set up by the defendant in its answer, and upon which it predicates its right to recover, reserves as a royalty to the Dunns one-twentieth of the product resulting from any valuable discovery made pursuant to the purposes of the lease; while the lease recited in the Wadsworth contract reserves as a royalty one-fifth of any such find. This variance between the real lease and the recital in the Wadsworth contract practically destroys any supposed ratification of the lease by the joint execution of the Wadsworth contract by Dunn and wife. If the lease by Dunn to defendant company was fully set out in the Wadsworth contract, so that no question of identity existed to render the matter of alleged recognition and ratification doubtful, still in the *absence* of any finding by the court, which had the evidence before it, that Mrs. Dunn consented to the lease by her husband to defendant company, we would not feel justified in saying that there was such a joint consent by husband and wife to the lease in question as would render it valid It is evident from the fact that the trial court made a finding that Mrs. Dunn knew of the execution of the lease by her husband to the defendant, that she did not object to the same, that the court could find nothing further in the evidence upon which to base consent to such a lease on the part of Mrs. Dunn. Having made a finding on the subject, the court undoubtedly made it as complete as the evidence would warrant, and this

conclusion is supported and reinforced by the fact that the trial court, upon the findings as made, rendered judgment for the defendant.

We do not think the doctrine of estoppel, contended for by the defendant, applies. We do not think Mrs. Dunn would be estopped in a proceeding to set aside the lease in question by the recital in the Wadsworth contract, even were the recital identical with the lease. The defendant was not a party to the Wadsworth contract, and did not in any way rely on the recitals therein. Its lease was made and accepted by it long before the Wadsworth contract was executed, and it knew nothing of the Wadsworth contract and recital, so far as the record shows, until said contract was placed on record, and then got its information in common with the rest of the world. It cannot be said that the defendant was at any time, in any way, affected adversely by the recital contained in the Wadsworth contract. If the recital in the Wadsworth contract fail, the defendant is no worse off than before. If Mrs. Dunn would not be estopped by reason of the recital in the Wadsworth contract, we do not see how her grantees could be estopped thereby. Nor do we think the plaintiff is estopped by any knowledge on its part of the existence of the lease by Dunn to the defendant. Plaintiff had a right, knowing of the lease, to rely upon its belief that it was void under the constitutional and statutory provisions relating to homesteads.

We recommend that the judgment of the district court be reversed, and the case sent back for new trial.

By the Court: It is so ordered.

All the Justices concurring.