In re John Thomas THEXTON, Debtor.

Edward J. NAZAR, Trustee, Plaintiff,

v.

John Thomas THEXTON, Defendant.

Bankruptcy No. 83–11398.
Adv. No. 83–0836.

United States Bankruptcy Court,
D. Kansas.

April 9, 1984.

Connie J. Nordboe of Robbins, Tinker, Smith & Metzger, Wichita, Kan., for debtor.

Edward J. Nazar of Redmond, Redmond, O'Brien & Nazar, Wichita, Kan., Trustee.

Steven B. Doering of Cole & Doering, Garnett, Kan., for Bank of Kincaid, a creditor.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 7 proceeding, the trustee has filed a complaint seeking turnover of the unaccrued royalty interest under an oil and gas lease. The trustee and a creditor

have filed objections to the debtor's exemption of his unaccrued royalty interest. The matters are joined for the purpose of this decision.

The issue which must be resolved is:

■ Is a lessor-mineral owner entitled to an exemption for an unaccrued royalty interest in unsevered oil and gas arising from a lease of oil and gas beneath surface homestead real estate, where the lessee has a producing well.

Briefs have been submitted and the Court is prepared to rule.

## FINDINGS OF FACT

The debtor filed a chapter 7 petition in bankruptcy on September 28, 1983. The debtor is a farmer.

The debtor resides on the West Half of the Southwest Quarter of Section 23, Township 22 South, Range 19 East of the 6th P.M. and on the West Half of the Northwest Quarter of Section 26, Township 22 South, Range 19 East. These are contiguous tracts of land amounting to 160 acres outside the limits of an incorporated town or city. This property has been exempted by the debtor in his bankruptcy schedule B–4.

The debtor has also claimed as exempt property an undivided one-half interest in all minerals in place and all income from the sale or production of the minerals. The debtor is apparently married and claims a one-half interest in this proceeding because his wife has not filed a petition in bankruptcy.

On December 8, 1983 the debtor turned over to the trustee a sum representing the debtor's undivided one-half interest in the oil and gas run check associated with oil and gas production for the period immediately preceding the filing of his bankruptcy petition.

The royalties of the debtor mineral owner-lessor arise out of two oil and gas leases. The first lease covers the West Half of SW ¼, 23–22–19 and is dated August 21, 1921. It was executed by the debtor's predecessors and produced approximately 109 barrels of oil in 1982. Oil was produced during only two months.

The second lease covers the West Half of NW ¼ 26–22–19, and is dated March 11, 1937. This lease has also yielded a producing well, and it appears to have produced 1,794 barrels of oil in 1982. Oil was pumped during 11 months.

## CONCLUSIONS OF LAW

### 1. Nature of Lessor's Royalty Interest in Kansas

■ In *Redmond v. Koch Oil Co. (In Re Kittle)*, 32 B.R. 690 (Bkrtcy.D.Kan.1983) this Court stated that in Kansas:

First, a lessee's leasehold interest in an oil and gas lease is treated as a real property interest and governed by real property laws: (a) when a creditor acquires, perfects, enforces or forecloses a mortgage on the lessee's leasehold interest (*Ingram v. Ingram* [214 Kan. 415, 521 P.2d 254 (1974)]; K.S.A. § 55–210); (b) for the purposes of venue (K.S.A. § 60–1001); (c) for the purpose of satisfaction of judgment (K.S.A. § 60–2401). Second, a lessee's leasehold interest in an oil and gas lease is treated as a personal property interest and governed by personal property law when: (a) a creditor with no previous interest in the leasehold seeks to obtain a judgment lien on the judgment debtor's lessee's leasehold interest (*Utica Nat'l Bank & Trust Co. v. Marney*, [233 Kan. 432, 661 P.2d 1246 (1983)]); K.S.A. § 60–2202); (b) certain taxes are involved (see K.S.A. § 79–420).

32 B.R. at 693. These confusing rules concerning the nature of a lessee's interest all stem from one general Kansas rule: a *lessee's* interest under an oil and gas lease is a license to explore, an incorporeal hereditament, a profit a prendre, a personal property right, unless a statute otherwise specifically classifies the interest as real property. See, e.g., *Utica Nat'l. Bank & Trust Co. v. Marney*, 233 Kan. supra, at 433–34, 661 P.2d 1246, and cases cited therein. For example, the case of *Ingram v. Ingram*,

supra, involved the issue of whether an assignment by the lessee of a three-fourth's working interest in an oil and gas lease was an assignment of personal property or real property. The Kansas Supreme Court held that a lessee's interest in *unextracted* oil and gas is governed by real property laws of perfection. The rationale for the *Ingram* holding can be explained as a recognition that a statute, the Uniform Commercial Code, provides that unextracted oil and gas are not goods, but rather realty. See K.S.A. §§ 84-9-105(h), -104(j) (1983); *Ingram v. Ingram*, 214 Kan. supra at 419, 422-23, 521 P.2d 254.

> This Court further stated in *In Re Kittle:*
> Third, a lessor's right to share in royalties from severed oil and gas is a personal property right (*In Re Sellens*, [7 Kan. App.2d 48, 637 P.2d 483, review denied 230 Kan. 818 (1982)]). Fourth, a lessor's future, unaccrued royalty interest in an oil and gas lease is a real property interest governed by the law of real property (*In Re Sellens*).

32 B.R. at 693. In arriving at its decision in *In Re Sellens*, the Kansas Court of Appeals described the nature of the lessor's interest as follows:

> Neither is an oil and gas lease a usual contract. It is signed by only one party, the lessor. It is a grant with conditions. One of the conditions is a reservation to the lessor of a share in the production .... The lessor's rights to royalty do not originate with the lease. The lessor reserves his rights to royalty out of the grant. His rights arise from his ownership of the real estate rather than the lease and are therefore interests in real estate until the oil and gas are captured. It follows then that future royalty (unaccrued royalty) is a part of the real estate of the lessor; it is uncaptured and of an undetermined amount or location. Present royalty (accrued royalty) on the other hand, is captured and severed from the realty; it is personal property.

*In Re Sellens*, 7 Kan.App.2d supra at 51, 637 P.2d 483. See also 3 Kuntz, Law of Oil and Gas § 38.2 at 242 (1967). It is interesting to note that in *Sellens*, the oil and gas leases were producing, and the Court held that a bequest by the lessor/mineral owner of personal property included accrued royalties and passed to the heir receiving the personal property under the lessor/mineral owner's will, but the right to future royalties passed to the heirs receiving the real property under the lessor/mineral owner's will.

Finally, the Supreme Court of Kansas has recently held that a non-mineral owner/non-lessor royalty interest in oil and gas produced is a personal property interest. *Kumberg v. Kumberg*, 232 Kan. 692, 699, 659 P.2d 823 (1983).

■ In short, as this Court held in *In Re Kittle*, a lessor-mineral owner's right to future, unaccrued royalties from oil and gas that has not yet been severed, even if there is a producing well, is in fact a real property interest, until such time as severance occurs. The Court believes this is the law in Kansas, and the law in other states. See, e.g., *U.S. Pipeline v. Kinder*, 609 S.W.2d 837 (Tex.Civ.App.1977); *Evans v. Mills*, 67 F.2d 840 (5th Cir.1933).

### 2. *Question of Exemption*

■ The Kansas Constitution provides an exemption:

> to the extent of one hundred and sixty acres of farming land ... occupied as a residence by the family of the owner, together with all improvements on the same.... [The homestead] shall not be alienated without the joint consent of husband and wife .... *And provided further*, that the legislature ... may provide that when it is shown the husband or wife while occupying a homestead is adjudged to be insane, the duly appointed guardian of the insane spouse may be authorized to join with the sane spouse ... in executing a lease thereon authorizing the lessee to explore and produce therefrom oil, gas, coal, lead, zinc, or other minerals.

Kan. Const. Art. 15 § 9. The homestead exemption must be liberally construed in favor of the homestead. See, e.g., *State,*

*ex rel. Apt. v. Mitchell,* 194 Kan. 463, 399 P.2d 556 (1965). "The term *homestead* is not restricted to the dwelling house alone." Note, Survey of Kansas Homestead Law, 13 Washburn L.J. 446, 450 (1974). Leasing a portion of the homestead is not *necessarily* an abandonment of that portion of the homestead. *Barten v. Martin,* 133 Kan. 329, 299 P. 614 (1931).

In *Franklin Land Co. v. The Wea Gas, Coal & Oil Co.,* 43 Kan. 518, 23 P. 630 (1887), and 54 Kan. 533, 38 P. 790 (1895), an oil and gas lease executed by the husband alone was held invalid where the lease covered oil and gas beneath the husband and wife's surface homestead. 43 Kan. at 523, 23 P. 630. In order to execute the conveyance by lease of oil and gas beneath a homestead, the court held both husband and wife must consent because the lease of oil and gas rights will interfere with the use and enjoyment of the surface rights. See also *Peterson v. Skidmore,* 108 Kan. 339, 195 P. 600 (1921); *Thompson v. Millikin,* 93 Kan. 72, 143 P. 470 (1914); *Palmer Oil & Gas Co. v. Parish,* 61 Kan. 311, 59 P. 640 (1900). These cases appear to stop just short of holding that the oil and gas beneath the surface homestead are exempt as part of the exempt surface realty, but nothing in these cases indicate that oil and gas *are not* part of the surface homestead exemption and these cases did not involve attempted enforcement of creditors' rights. See Collins, The Nature and Execution of Oil and Gas Leases and Mineral Conveyances, 8 Kan.B.A.J. 25, 26–27 (1939). Furthermore, these cases were all decided before Art. 15, § 9 was amended in 1944 to provide that the guardian of an insane spouse can jointly execute an oil and gas lease on behalf of the insane spouse. See also K.S.A. § 59–2314 to –2322 (1983). These Kansas oil and gas cases appear analogous to the Kansas Supreme Court's exemption for growing crops that until severed, growing crops are part of the homestead and cannot be attached because execution and sale of growing crops would interfere with the use and enjoyment of the homestead. *Isley v. Kitch,* 123 Kan. 441, 444–46, 256 P. 133 (1927). Accord, *In Re Johnson,* 202 Kan. 684, 699, 452 P.2d 286 (1969); *Blattler v. Westerman,* 130 Kan. 415, 286 P. 217 (1930).

■ The Court has not been able to find any Kansas cases to indicate whether a creditor can execute on the surface/mineral owner/lessor's interest in unsevered oil and gas to be produced under an existing oil and gas lease, when the surface realty is exempt. In other jurisdictions, the execution of an oil and gas lease is not inconsistent with the mineral owner/lessor's homestead rights. See, e.g., *Bradley v. Howell,* 126 S.W.2d 547, 564 (Tex.Civ.App. 1939). Furthermore, in Texas,

> the lessors have a homestead interest in the royalty interest reserved under an oil and gas lease ....

*Thompson v. Thompson,* 149 Tex. 632, 236 S.W.2d 779, 785 (1951). In Arkansas, a strata of coal under a surface homestead is part of the homestead and exempt. *Russell v. Berry,* 70 Ark. 317, 67 S.W. 864 (1902). In Oklahoma it appears a lessor's *accrued* royalties are not exempt, because the accrued royalties are personalty, see *Hancock v. Farmers Mill & Elevator Co.,* 287 P.2d 214 (Okl.1955), and before severance, the oil and gas in place are part of the exempt homestead, and thus also exempt. *First National Bank of Sentinel v. Anderson,* 206 Okl. 54, 240 P.2d 1066, 1069 (1952). In Kansas, oil and gas in the ground is real estate and discovery through exploration under an oil and gas lease does not effect a disseverance. Rather, disseverance takes place only when oil is brought to the surface. *Burden v. Gypsy Oil Co.,* 141 Kan. 147, 150–52, 40 P.2d 463 (1935). Finally, in *Chicago, Wilmington & Franklin Coal Co. v. Herr,* 40 F.Supp. 311 (E.D. Ill.1941), modified on other grounds, 127 F.2d 1010 (7th Cir.1942), cert. denied 317 U.S. 669, 63 S.Ct. 74, 87 L.Ed. 538 (1942), the district court held that under Illinois law, a *grantee* of mineral rights can establish a homestead on that portion of the grantor's surface estate as is necessary to produce oil and gas, because the interest in unsevered oil and gas is inseparable from the realty. 40 F.Supp. at 313.

In light of the characterization of the unaccrued royalties and unsevered oil and gas as realty; the analogous treatment of growing, unsevered crops as exempt; the constitutional and judicial requirement of joint spousal consent to transfer an interest in oil and gas beneath a surface homestead; the liberal construction afforded homestead exemptions; and in light of the holdings of other jurisdictions, the Court holds that in Kansas, unsevered oil and gas in place is part of the surface real estate. If the surface land is an exempt homestead, the surface landowner's mineral interest ownership, and the surface landowner/lessor's unaccrued royalty interest in unsevered oil and gas pursuant to an oil and gas lease is part of the homestead and is also exemptible.

### 3. Use of Lease

There can be little question that the oil and gas lessor executes the lease for profit. In *In Re Cummings*, Case No. 79–11984 (Bankr.D.Kan.1981), this Court held that the term "farming land" in Kan. Const. Art. 15, sec. 9 and K.S.A. § 60–2301 "means land outside an incorporated city or town ...," whether or not the land is susceptible of being farmed and whether or not the land is farmed. Id. at 5. This holding was affirmed on appeal to the district court. *In Re Cummings*, 40 B.R. 208 at 212 (D.Kan.1983) (Kelly, J.). Also in *Cummings*, this Court held that:

the court should grant an exemption only to those portions of an estate that are actually a homestead, severing the non-homestead portions, and making the non-homestead portions an asset of the debtor's estate and non-exempt.

Case No. 79–11987 at 7. This holding was based on this Court's previous ruling in *In Re Belcher*, 13 C.B.C. 240 (Bkrtcy.D.Kan.), aff'd. 13 C.B.C. 245 (D.Kan.1977), aff'd. 579 F.2d 73 (10th Cir.1978).

[T]he relevant inquiries are whether the business uses to which the homestead is put are of an incidental character, ... whether the portion used as a business is necessary for the family's use independent of its business, ...; whether any buildings are chiefly valuable as, or used for business purposes, ... whether the business use is primary or secondary ..., and whether the business use is inconsistent with the purpose behind granting homestead exemptions ....

Case No. 79–11984, supra at 7. The Court herein adopts and incorporates by reference the discussion and holding in *In Re Cummings*. Based on these considerations, this Court in *Cummings* held that 8 acres of land leased by the debtor to a local radio station on which the radio station erected a permanent tower was not exempt.

On appeal, the district court reversed this holding stating:

The eight acre tract leased by debtor to a local radio station for its transmitter is apart from Mr. Cummings' residence and shop building. The debtor has access to it and uses the area around the transmitter. Access to the transmission tower would necessitate driving a substantial distance over the debtor's land. Consequently, the Court finds the eight acre tract in the middle of the homestead, although clearly used for a non-agricultural commercial purpose, is so inconveniently located that it would be impractical to partition or sever it from the rest of the homestead.

District court Case No. 82–1951, supra at 213. Based on this appellate holding, even if the lessor's execution of an oil and gas lease is a non-homestead, commercial use, the Court would be bound to hold that the unaccrued royalty interest, which is a real estate interest, cannot be severed. The District Court decision does not give much guidance concerning when severance is not impractical. This Court believed severance of a surface lease (undoubtedly with an easement permitting access for the lessee to the tower) in *Cummings* was practicable. In light of the District Court holding, this Court is unable to meaningfully distinguish the instant lessor's interest. In fact, pursuant to inferences to be drawn from existing Kansas Statutes and cases and

those cases cited herein from other jurisdictions, the case for exemption in this instance seems substantially stronger than the radio tower in *Cummings*.

The Court's holding today has ramifications only in the context of bankruptcy. In the non-bankruptcy setting, where there is a producing well, unaccrued royalty interests soon enough become accrued royalty interests, classified as personal property, and without statutory exemption protection. The levying creditor can attach or garnish the royalty interest as it accrues, and the debtor does not have control over accrual. In the context of bankruptcy, however, the ramifications are quite different. The debtor claims an exemption as of the date the bankruptcy petition is filed and the case is commenced. 11 U.S.C. §§ 522(b), 541(a)(1). On the date the case is commenced, the debtor has accrued royalty rights which are non-exempt personal property interests and which must be turned over to the trustee. Also on the date the case is commenced, the debtor has an unaccrued royalty interest under an oil and gas lease in unsevered oil and gas. The unaccrued royalty interest is exempt on that date. What the debtor does with the unaccrued royalties when they accrue, and an examination of the impending accrual of the royalties is not relevant. The debtor does not have to indicate an intent to reinvest the royalties when they accrue, because on the date the case was commenced, the royalties were unaccrued, exempt, and at that moment not capable of reinvestment. After the petition date, post-petition creditors and creditors whose claims are not discharged in the bankruptcy proceeding may seek satisfaction of obligations owed to them from the accrued royalty interest.

■■■ In essence, the Court is stating that the Bankruptcy Code does not provide a loss of exemptions in the bankruptcy proceeding for property exempt on the petition date, but about to become non-exempt sometime after the petition date. Once again, an analogy to immature crops can be drawn. Where crops are growing on the debtor's homestead when the bankruptcy case is commenced, they are exempt. See *Isley v. Kitch*, supra. The fact that the crops may be practically mature, and about to be harvested for a profit by the debtor after the bankruptcy petition date, and thus about to lose their exempt status, does not make the crop growing on the date the bankruptcy case is commenced any less exempt, nor does it entitle the trustee to possession. *Stratton v. Ermis*, 268 F. 533 (5th Cir.1925).

Finally, the trustee argues that oil and gas royalties are in effect proceeds received under a lease. The Court agrees that the lessor's royalties are nothing more than accrued and unaccrued rights to receive payments under a contract with a right of reverter to the lessor upon the lessee's cessation under the contract. Certainly the royalties are unnecessary to enjoyment of the homestead by the debtor and production of oil and gas for profit is no more a homestead use than operation of any other business venture. The Court, however, is bound to follow the state of Kansas' interpretations of its own law of oil and gas, which, perhaps unfortunately for the creditor of a debtor in bankruptcy, does not classify a lessor's royalties as a right to receive payments.

The concept of an oil and gas lessor retaining his ⅛ interest in the unsevered oil and gas itself, rather than simply contracting to receive payments under a lease, is a legal fiction. The Court is reminded of Judge Learned Hand's observation that:

> When the law adopts a fiction, it is, or at least it should be, for some purpose of justice.

*In Re Walter J. Schmidt & Co.*, 298 F. 314, 316 (S.D.N.Y.1923) (Hand, J.). There is no justice in the legal fiction that an unaccrued royalty is a real estate interest and part of the homestead. The lessor does not want the oil and gas; the lessor intends to turn the oil and gas into cash, and realize a profit; the lessor has no control over production; the lessor probably hopes the well never runs dry. And yet, based upon the existing statutes and cases comprising the

law in this area, a legal fiction with a questionable purpose of justice at best is permitted, and in fact required, to prevail.

Therefore, the Court must hold that the debtor's royalties that were unaccrued on the date the debtor filed his chapter 7 petition are exempt. Accordingly, the trustee's turnover request is denied and the trustee's objection to the debtor's exemption of unaccrued royalties is overruled.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.