**In re Shannon J. CASSETTO and Frank A. Cassetto, Jr., Debtors.**

**No. 11–42995.**

United States Bankruptcy Court, N.D. Ohio.

July 25, 2012.

■■■■■■■■■■■■■■■■■■

Eric James Ashman, Cleveland, OH, for Debtor.

## MEMORANDUM OPINION REGARDING CHAPTER 7 TRUSTEE'S MOTION TO EFFECTUATE EXECUTION OF OIL AND GAS LEASE

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on Motion to Effectuate Execution of Oil and Gas Lease ("Motion to Lease") (Doc. # 52) filed by Andrew W. Suhar, Chapter 7 Trustee ("Trustee"), on May 24, 2012. The Debtors Shannon J. Cassetto and Frank A. Cassetto, Jr. ("Debtors") filed Response to Trustee's Motion to Effectuate Execution of Oil and Gas Lease ("Response") (Doc. # 56) on May 31, 2012.

The Court held a hearing on the Motion to Lease on June 28, 2012 ("Hearing"), at which appeared the Trustee on behalf of himself and Brett Billec, Esq. on behalf of the Debtors. Just prior to the Hearing, the Trustee filed Trustee's Memorandum in Support of Motion to Effectuate Execution of Oil and Gas Lease ("Trustee's Brief") (Doc. # 59). At the conclusion of the Hearing, the Court asked the parties to submit briefs in further support of their positions. The Debtors filed Response to Trustee's Memorandum in Support of Motion to Effectuate Execution of Oil and Gas Lease ("Debtors' Brief") (Doc. # 62) on July 9, 2012. On July 18, 2012, the Trustee filed a second document styled Memorandum in Support of Motion to Effectuate Execution of Oil and Gas Lease ("Trustee's Second Brief") (Doc. # 63).

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general orders of reference (General Order Nos. 84 and 2012–7) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

Having considered the entire record, including the written submissions and oral arguments at the Hearing, for the reasons set forth herein, the Court will grant the Motion to Lease and will overrule the Debtors' objection thereto.

## I. PETITION AND SCHEDULES

The Debtors filed a voluntary petition ("Petition") (Doc. # 1) pursuant to chapter 7 of Title 11 on October 14, 2011 ("Petition Date"). On the Petition, the Debtors listed two separate addresses, with Debtor Shannon J. Cassetto ("Shannon") indicating her residence as 1067 Yankee Run Road, Masury, Trumbull County, Ohio ("Real Estate"). On Schedule A to the Petition, the Debtors listed the Real Estate as jointly held real property having a current value of $100,800.00 and a secured claim of $175,917.00. (Pet. at 10.) The Debtors claimed an exemption in the Real Estate, pursuant to O.R.C. § 2329.66(A)(1) ("Homestead Exemption"), in the amount of $21,625.00. (Id. at 15.) The Debtors received a discharge on April 18, 2012. (See Doc. # 47.)

## II. MOTION TO LEASE

The Trustee seeks authorization to effectuate execution of an oil and gas lease ("Oil and Gas Lease") (Doc. # 54) with BP America Production Company ("BP") concerning the Real Estate, which is comprised of 15.5 acres. Pursuant to the Oil

and Gas Lease, BP will pay the Trustee a signing bonus in the amount of $60,450.00 (calculated at $3,900.00 for each of the 15.5 acres) ("Signing Bonus"). The term of the Oil and Gas Lease is five years and may be renewed for three years upon payment of an additional signing bonus. If BP drills and removes oil and/or gas from the Real Estate, BP will pay royalties of 17.5% on the sale of such resources.

At the Hearing, the Trustee represented that, upon receiving the Signing Bonus, he will abandon the Lease and the Real Estate to the Debtors, who will receive any future royalty payments. The Debtors will also receive any signing bonus in connection with renewal of the Lease. As the Trustee further explained, "While the ownership of mineral rights, after abandonment by the Trustee, vests in the owner of the property, the lease becomes a covenant or easement running with the land. O.R.C. § 5301.56(A)(5)." (Trustee's Second Br. at 2.)

The Trustee represented that the terms and conditions of the Oil and Gas Lease are fair and reasonable, having been negotiated by a non-profit organization called ALOV (Associated Landowners of the Ohio Valley). According to the Trustee, ALOV is a land-owner friendly organization, which negotiated oil and gas leases with BP covering approximately 84,000 acres in Trumbull County.

The Trustee acknowledged that Shannon resides on the Real Estate and claims it as her residence; however, he disputes that the Homestead Exemption applies to the Signing Bonus. The Trustee argues that he should be authorized to enter into the Oil and Gas Lease because (i) the right to enter into the Oil and Gas Lease is property of the bankruptcy estate; and (ii) the Signing Bonus is property of the bankruptcy estate. He further argues that, because oil and gas drilling is regulated by the State of Ohio, the Debtors have exaggerated any inconvenience they may experience if oil and gas are found to exist at the Real Estate.

### III. DEBTORS' RESPONSE TO MOTION

The Debtors object to the Trustee being authorized to effectuate execution of the Oil and Gas Lease on the basis that (i) there are alleged environmental issues associated with hydraulic fracking; (ii) "even without any environmental concerns, the massive machinery and noise would impair the use and enjoyment of the homestead and devalue the Debtors' property" (Resp. at 1); (iii) the Debtors' interest in the oil and gas is "unsevered" from the Real Estate; and (iv) in the alternative, Shannon is entitled to her Homestead Exemption in the amount of $21,625.00.

The Debtors principally rely on *Nazar v. Thexton (In re Thexton)*, 39 B.R. 367 (Bankr.D.Kan.1984), for the proposition that this Court should deny the Motion to Lease because the homestead exemption applies to oil and gas resources that have not been severed from real estate.

### IV. LEGAL ANALYSIS

#### A. Trustee's Duty to Maximize Property of the Bankruptcy Estate

Section 541 of Title 11 defines property of the bankruptcy estate, as follows:

(a) .... Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1) (West 2012).[1]

■ It is not disputed that, as of the Petition Date, the Debtors had an interest in the oil and gas rights that underlie their Real Estate. Indeed, the "Debtors recognize the mineral rights are property of the estate." (Debtors' Br. at 4.) As a consequence, there is no question that the oil and gas rights constitute property of the Debtors' bankruptcy estate, as encompassed within § 541(a).

■ The Trustee's duties include collecting and reducing to money the property of the estate. *See* 11 U.S.C. § 704(a)(1). Because the oil and gas rights are property of the estate, the Trustee is required to administer those rights to maximize value to the bankruptcy estate—which may include entering into an oil and gas lease. According to the Trustee, the Signing Bonus is a one-time payment made upon signing the Oil and Gas Lease as an enticement to enter into the Lease. (Trustee's Br. at 2.) In receiving the Signing Bonus, the Trustee is reducing to money the property interest associated with the potential for oil and gas extraction on the Real Estate. As a consequence, there is no question that (i) this Court may authorize the Trustee, in furtherance of his statutory duties under § 704, to effectuate execution of the Oil and Gas Lease; and (ii) the resulting Signing Bonus constitutes property of the bankruptcy estate.

### B. Use, Enjoyment and Value of Real Estate

■ Notwithstanding the Debtors' recognition that the oil and gas rights are property of the bankruptcy estate, they argue that the Trustee should not be authorized to effectuate execution of the Oil and Gas Lease because the "massive machinery and noise" that result from oil and gas drilling "would impair the use and enjoyment of the homestead and devalue the Debtors' property." (Resp. at 1.) The Debtors offer no support for the proposition that the alleged impairment in use and enjoyment and/or diminution in value of the Real Estate is sufficient reason to prohibit the Trustee from maximizing the value of the bankruptcy estate. The Debtors also offer no support for their assertion that they have a right to a homestead that is free from noise or machinery associated with oil and gas drilling, which may occur if the Oil and Gas Lease becomes effective.

The Debtors make a vague reference in the Response to alleged environmental concerns connected with oil and gas leas-

---

1. (b) Property of the estate does not include—
    * * *
    (4) any interest of the debtor in liquid or gaseous hydrocarbons to the extent that—
    (A) (i) the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement; and
    (ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 544(a)(3) of this title; or
    (B) (i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and
    (ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 542 of this title[.]
11 U.S.C. § 541(b)(4) (West 2012).
    The exclusion from property of the estate for liquid or gaseous hydrocarbons in § 541(b)(4) does not apply in this case because the Debtors expressly acknowledge that their interest in the subsurface oil and gas had not been transferred prior to the Petition Date. They state, "Debtors have not previously leased the oil and gas rights, making their interest unsevered." (Resp. at 2.)

ing in general,[2] but these alleged "dangers" are otherwise unspecified and unsupported. Moreover, in their Brief, the Debtors make no further reference to any alleged dangers or environmental concerns, but rather confine their arguments to diminution of the value of the Real Estate and applicability of the Homestead Exemption to the unsevered oil and gas beneath the Real Estate. The Debtors do not specify how the Real Estate will be devalued.

Although the Trustee "concedes that conveyance of mineral rights and severance of ownership carry the right to enter and remove the minerals[,]" the Trustee contends that "any inconvenience and noise that Debtors have raised as concerns are temporary." (Trustee's Second Br. at 3–4.) In support of this contention, the Trustee cites Ohio statutes and regulations that provide for the restoration and reclamation of land after specified time periods.

The Trustee further postulates that the Debtors' opposition to the Oil and Gas Lease may be for the self-serving reason that they would prefer to retain the entire Signing Bonus for themselves.

> It would be in Debtors' self-interest to stop the Trustee from entering into any such leases and to preserve the mineral estate, intact, until this bankruptcy case is dismissed, so that Debtors' [sic] may themselves sign an oil and gas lease for the signing bonus. Such act would unfairly deprive their creditors of any payment.

(*Id.* at 6.) Although this statement is speculative, in light of the Debtors' abandonment of the environmental danger argument, this Court finds that the Trustee's statement is potentially meritorious.

This Court found many cases that mention the use and/or enjoyment of a homestead, but almost always in the context of a debtor's continued ability to use, *i.e.*, maintain or not lose, the property as a homestead. The Debtors do not dispute that the Real Estate consists of 15.5 acres and they offer no reason why they will not be able to continue to use and enjoy the Real Estate as Shannon's homestead in the event the Oil and Gas Lease becomes effective. Indeed, the Debtors acknowledge, "Granted, the Debtor–Shannon is able to keep and continue to enjoy the homestead with the lease of mineral rights instead of an outright sale." (Debtors' Br. at 4.) The Debtors argue, "However, the terms of the lease allow for dramatic changes to the character of the property at issue." (*Id.*)

In contrast, the Trustee argues that the character of the Real Estate will not be subject to dramatic changes because it will be returned to its original condition.

> [The] use and restoration of the surface is closely monitored by the Ohio Department of Natural Resources, Division of Resource Management [sic] and operations are proscribed in detail by the Department's regulatory scheme.... Ohio's oil and gas law and the rules adopted under it constitute a comprehensive plan with respect to *all aspects of* siting, drilling and operations of oil and gas wells.

(Trustee's Second Br. at 4 (emphasis in original).)

The Court found no cases that prohibit a trustee from administering property of the bankruptcy estate or a creditor from levying on a debtor's property on the basis that the debtor's property would be devalued or diminished thereby. In point of fact, whenever a creditor levies on proper-

---

**2.** "Counsel is in the process of requesting amicus curiae briefs from environmental organizations to properly explain the dangers of hydraulic fracking (the process of releasing the gas from shale rock with water and chemicals)." (Resp. at 1.)

ty of a debtor, the debtor's property is diminished, *e.g.*, repossession of a vehicle, garnishment of wages, foreclosure on a residence, etc.

The Debtors have pointed to nothing that suggests that the alleged noise, inconvenience and/or diminution in value will be permanent. The Oil and Gas Lease is for a term of five years. Oil and gas drilling is regulated by the State of Ohio and requires restoration of real property. Thus, it appears that any noise, inconvenience or alleged diminution in value will be temporary. Accordingly, this Court finds nothing to prohibit the Trustee from effectuating execution of the Oil and Gas Lease merely because execution of such Lease may (i) result in noise and machinery on the homestead; and/or (ii) diminish the value of the Real Estate.

### C. The Ohio Homestead Exemption

Section 522 of Title 11 permits a debtor to exempt certain property as property of the estate, notwithstanding § 541. In Ohio, a debtor is required to use the state exemptions rather than the federal exemptions. Accordingly, the Court looks to O.R.C. § 2329.66(A) for the amounts and kinds of property that a debtor may claim as exempt from the bankruptcy estate.

As set forth above, the Debtors claim the Real Estate is exempt in the amount of $21,625.00 pursuant to the Homestead Exemption in O.R.C. § 2329.66(A)(1).[3] O.R.C. § 2329.66(A)(1) provides:

> (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
>
> \* \* \*

[ (1) ](b) In the case of all other judgments and orders, the person's interest, not to exceed [twenty-one thousand six hundred twenty-five] dollars, *in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence.*

O.R.C. § 2329.66(A)(1)(b) (West 2012) (emphasis added).

The Debtors acknowledge that the mineral rights are property of the bankruptcy estate, but argue:

> [T]he rights should at least be treated as exempt property. If the Trustee were to sell the property, the Debtor–Shannon would certainly be entitled to her homestead exemption from the proceeds of the sale. The lease of homestead exempt property should at least entitle her to the same.

(Debtors' Br. at 4.) The Debtors' premise is that Shannon's Homestead Exemption applies to the Signing Bonus because such exemption applies to the oil and gas rights associated with the Real Estate.

As set forth above, the Debtors principally rely on *Nazar v. Thexton (In re Thexton),* 39 B.R. 367 (Bankr.D.Kan.1984), for the proposition that the homestead exemption applies to the oil and gas rights and, thus, prevents the Trustee from entering into the Oil and Gas Lease that would sever the oil and gas from the Real Estate. Reliance on the rationale in *Thexton,* however, is misplaced because the issue in *Thexton* is quite different from the issue before this Court. First, the homestead exemptions in Kansas and Ohio are in no way similar. Second, the issue before the bankruptcy court in *Thexton* was whether the Kansas homestead exemption covered future royalties[4] from a producing

---

**3.** The Trustee did not object to the Debtors' claim of the Homestead Exemption.

**4.** Any future royalty interest resulting from the Oil and Gas Lease will belong to the Debtors. "In short, the Debtors gain from

oil well. The issue before this Court is whether the Ohio Homestead Exemption applies to the Signing Bonus.

Pursuant to the Kansas Constitution, a debtor may exempt up to 160 acres of farming land occupied as a residence by the family of the owner, together with improvements thereon. *See Thexton,* 39 B.R. at 370 (citing Kan. Const. Art. 15 § 9). The exemption provides that the homestead shall not be alienated without the joint consent of husband and wife and, if a spouse is adjudged insane, a duly appointed guardian of the insane spouse " 'may be authorized to join with the sane spouse ... in executing a lease thereon authorizing the lessee to explore and produce therefrom oil, gas, coal, lead, zinc or other minerals.' " *Id.* (quoting Kan. Const. Art. 15 § 9). In contrast, there are no similar provisions in the Ohio Homestead Exemption, which (i) covers "one parcel or item of real or personal property that the person or a dependent of the person uses as a residence[;]" and (ii) makes no mention whatsoever of mineral rights. O.R.C. § 2329.66(A)(1)(b).

In *Thexton,* the debtor argued that, as a lessor-mineral owner, he was entitled to an exemption for an unaccrued royalty interest in unsevered oil and gas arising from an oil and gas lease beneath surface homestead real estate. The Kansas bankruptcy court found that, under Kansas law, the unaccrued royalty interest was real estate subject to the homestead exemption. The Debtors urge this Court to adopt the *Thexton* reasoning even though the homestead exemptions in Kansas and Ohio are strikingly different. Moreover, the *Thexton* bankruptcy court expressed some frustration with the mandated outcome of the case, as follows:

the Trustee's Oil and Gas Lease. They, as the surface owners, are entitled to the royalties from any and all producing wells if any oil

Finally, the trustee argues that oil and gas royalties are in effect proceeds received under a lease. The Court agrees that the lessor's royalties are nothing more than accrued and unaccrued rights to receive payments under a contract with a right of reverter to the lessor upon the lessee's cessation under the contract. *Certainly the royalties are unnecessary to enjoyment of the homestead by the debtor and production of oil and gas for profit is no more a homestead use than operation of any other business venture. The Court, however, is bound to follow the state of Kansas' interpretations of its own law of oil and gas,* which, perhaps unfortunately for the creditor of a debtor in bankruptcy, does not classify a lessors' royalties as a right to receive payments.

[T]he Court is reminded of Judge Learned Hand's observation that:

> When the law adopts a fiction, it is, or at least it should be, for some purpose of justice.

*In re Walter J. Schmidt & Co.,* 298 F. 314, 316 (S.D.N.Y.1923) (Hand, J.). *There is no justice in the legal fiction that an unaccrued royalty is a real estate interest and part of the homestead.... And yet, based upon the existing statutes and cases comprising the law in this area, a legal fiction with a questionable purpose of justice at best is permitted, and in fact required, to prevail.*

*Thexton,* 39 B.R. at 373–74 (emphasis added). The bankruptcy court in *Thexton* was compelled by state law to find that the *Kansas homestead exemption* applied to the debtor's unaccrued royalty interests. This Court is not so compelled because (i)

and/or gas is discovered on the property." (Trustee's Second Br. at 5–6.)

Ohio law does not mandate the same result; and (ii) the Ohio Homestead Exemption is significantly different from the Kansas homestead exemption. Furthermore, Judge Pusateri recognized that the result in *Thexton* was a legal fiction not supported by justice. As a consequence, this Court finds the *Thexton* case to be distinguishable and declines to adopt and extend its reasoning to the instant facts.

### D. The Ohio Homestead Exemption Does Not Apply to the Signing Bonus

As set forth above, if the Trustee is authorized to effectuate execution of the Oil and Gas Lease, the resulting Signing Bonus will constitute property of the bankruptcy estate. The only remaining question is whether the Homestead Exemption applies to the Signing Bonus. The Signing Bonus is separate and apart from the unsevered oil and gas rights, although the Debtors' arguments appear to use the concepts interchangeably. The Signing Bonus and the oil and gas rights are not interchangeable, although they are related.

The Debtors' syllogism is: if unsevered oil and gas rights are real estate, then they are part of the homestead and subject to the Homestead Exemption; if the oil and gas rights are subject to the Homestead Exemption, then a signing bonus to enter into a lease for the potential of oil and gas drilling must also be subject to the Homestead Exemption. There are several flaws to the Debtors' argument.

First, the Debtors have already received the full benefit of the Homestead Exemption. On February 8, 2012, the Debtors filed Motion to Avoid Judgment Liens (Doc. # 35), which stated that the Real Estate has a fair market value of $100,-

800.00 [5] and is subject to a first mortgage in the amount of $153,620.00 held by BAC Home Loans. The Debtors sought to avoid two judgment liens, as follows: (i) lien held by Seven Seventeen Credit Union in the amount of $16,660.09; and (ii) lien held by Discover Bank in the amount of $5,777.56, on the grounds that such judgment liens impaired Shannon's Homestead Exemption in the amount of $21,625.00. The Court entered Order Granting Motion to Avoid Judgment Liens Held by Seven Seventeen Credit Union and Discover Bank ("Order Avoiding Judicial Liens") (Doc. # 43) on March 9, 2012.

The fact that the Debtors have already received the full benefit of the Homestead Exemption in the Order Avoiding Judicial Liens, however, is not dispositive of whether the Homestead Exemption applies to (i) oil and gas rights that have not been valued; and/or (ii) the Signing Bonus. Even if the Debtors had not avoided the judicial liens, this Court would reach the same result, *i.e.*, that the Homestead Exemption does not apply to either oil and gas rights that have not been valued or the Signing Bonus.

The difficulty of valuing subsurface, *i.e.*, unsevered, oil and gas rights is apparent. Although under different circumstances, Judge Russ Kendig faced the issue of valuation of oil and gas rights in a chapter 13 case in *In re Loveday*, 2012 WL 1565479, 2012 Bankr.LEXIS 1937 (Bankr.N.D.Ohio May 2, 2012). In the *Loveday* case, the debtors filed a motion to retain oil and gas royalties after a third party offered to purchase the oil and gas rights to the debtors' real property. The chapter 13 trustee objected to the debtors' motion on the basis that the proceeds from the sale represented disposable income that had to

---

**5.** It is clear that the value of the oil and gas rights was not included in the Debtors' valuation of the Real Estate for purposes of avoiding the judicial liens. Nonetheless, the Debtors have received the full value of the Homestead Exemption.

be committed to the debtors' chapter 13 plan for distribution to creditors. The trustee argued that the sale proceeds were part of the debtors' estate and had to be included in a hypothetical liquidation analysis. The debtors argued that the "oil and gas rights were disclosed as part of the value of real estate because ownership in the real property includes everything above and below the surface." *Id.* at *2, 2012 Bankr.LEXIS 1937, at *3. The court stated:

> The issue that arises in this matter is whether the Debtors scheduled the value of the oil and gas rights by listing their interest in the real property on Schedule A and, thus, the oil and gas rights vested in the Debtors at the time of confirmation under the order confirming plan, or whether the oil and gas rights were not scheduled with the value of the real property on Schedule A and, thus, remain property of the estate under the order confirming plan.

*Id.* at *2, 2012 Bankr.LEXIS 1937, at *4.

The court discussed the two theories of ownership of oil and gas rights.

> Under the ownership in place theory, "the owner of a tract of land holds the fee in oil and gas underlying the boundaries of his property even though the oil and gas are not the subject of actual possession until brought to the surface." Such rights may be "severed from the balance of the land, by grant or reservation, in the same manner as in the case of coal or other solid minerals," creating a separate and distinct interest that can be owned to the same extent as the surface. Conversely, the nonownership theory "recognizes the migratory nature of oil and gas, [and] requires actual possession to establish ownership of the resource, and the right held by the landowners is 'the right to reduce the oil and

gas to possession or to sever this right for economic consideration.'"

> Courts in Ohio are split regarding the treatment of oil and gas rights to an owner. In *Pure Oil [Co. v. Kindall,* 116 Ohio St. 188, 156 N.E. 119 (1927)], the court discussed that "[i]t is well established that in Ohio oil and gas in place are the same as any part of the realty."

> Conversely, other cases discuss that oil and gas belong to no one until it [sic] is reduced to actual possession....

> This court finds that the nonownership theory is the more sensible approach to the ownership of oil and gas rights for purposes of valuation in bankruptcy. Given the migratory nature of oil and gas, it is premature to give value to the oil and gas before they are extracted from the land. The varying price of oil and gas affects the exploration of real property for their existence and, therefore, to value real property to include the value of oil and gas is near impossible. Therefore, the value of the oil and gas cannot be determined to any degree until the oil and gas are extracted from the land or at least until an offer is made to a debtor to purchase the oil and gas rights to specific real property.

*Id.* at *3, 2012 Bankr.LEXIS 1937, *5–8 (citations omitted).

This Court is also persuaded that the nonownership theory is the more sensible theory for valuation of unsevered oil and gas rights. As a consequence, this Court does not fault the Debtors for not including the value of the oil and gas rights in valuing their Real Estate, either in their Schedules or in the Motion to Avoid Judgment Liens. However, precisely because the oil and gas rights cannot be valued until they are either removed from real estate or there is, at minimum, an offer to purchase the right to remove the oil and

gas, the Homestead Exemption cannot apply to such rights. The Homestead Exemption exempts certain property of a debtor—up to a specified dollar amount—from execution by a creditor. If the oil and gas rights cannot be valued, how can a creditor know if the rights constitute an asset? How can a creditor execute on unvalued oil and gas rights? If a value cannot be placed on the property right, how can one know if the specified dollar exemption applies? Indeed, until oil and gas rights are valued by removal of the oil and/or gas or an agreement to remove, it is impossible to ascertain whether such alleged rights have *any* value.

█ In case in point, these Debtors have already received the value of the Homestead Exemption in avoiding two judgment liens. Under the Debtors' theory, could those same judgment liens now be revived and attach to the Signing Bonus? The Court thinks not. The Signing Bonus is not real estate. Refiling the prior judgment liens would not cause them to attach to the Signing Bonus. The Homestead Exemption cannot apply to oil and gas rights while in the ground until such rights can be valued and, thus, exempted. Moreover, the Homestead Exemption does not apply to oil and gas once these resources are severed from the realty because, at that time, such oil and gas become personal property and cannot be part of the homestead. The Signing Bonus is even one further step removed. The Signing Bonus constitutes personal property and is not and cannot be subject to the Homestead Exemption.

█ At first blush, this may seem a harsh result because the Debtors cannot exempt the oil and gas rights relating to Shannon's residence pursuant to the Homestead Exemption either before or after execution of the Oil and Gas Lease. However, the Homestead Exemption was not enacted to create a windfall for debtors to the detriment of their creditors. The Homestead Exemption exists to allow a debtor to exempt the value of certain property so that the debtor and his/her dependents may have a place to live. As the *Thexton* court articulated, "Certainly the royalties are unnecessary to enjoyment of the homestead by the debtor and production of oil and gas for profit is no more a homestead use than operation of any other business venture." *Thexton*, 39 B.R. at 373–74. Like royalties from the production of oil and gas, the Signing Bonus has nothing to do with the Debtors' right to enjoy a homestead or exempt property for a homestead.

### V. CONCLUSION

For the reasons set forth above, this Court finds that (i) the Trustee is not prohibited from effectuating execution of the Oil and Gas Lease despite the Debtors' allegation that operation of oil and gas drilling will cause loss of use and enjoyment of and/or diminution in the value of the Real Estate; (ii) the Signing Bonus is property of the bankruptcy estate for the Trustee to administer for the benefit of creditors; and (iii) the Homestead Exemption does not apply to the Signing Bonus, which is, by its nature, personal property.

The Court will grant the Motion to Lease. The Trustee may effectuate execution of the Oil and Gas Lease and retain the Signing Bonus for the benefit of creditors of the Debtors' bankruptcy estate.

An appropriate order will follow.

**IT IS SO ORDERED.**

**ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION TO EFFECTUATE EXECUTION OF OIL AND GAS LEASE**

This cause is before the Court on Motion to Effectuate Execution of Oil and Gas

Lease ("Motion to Lease") (Doc. # 52) filed by Andrew W. Suhar, Chapter 7 Trustee ("Trustee"), on May 24, 2012. The Debtors Shannon J. Cassetto and Frank A. Cassetto, Jr. ("Debtors") filed Response to Trustee's Motion to Effectuate Execution of Oil and Gas Lease (Doc. # 56) on May 31, 2012.

The Court held a hearing on the Motion to Lease on June 28, 2012 ("Hearing"), at which appeared the Trustee on behalf of himself and Brett Billec, Esq. on behalf of the Debtors. Just prior to the Hearing, the Trustee filed Trustee's Memorandum in Support of Motion to Effectuate Execution of Oil and Gas Lease (Doc. # 59). At the conclusion of the Hearing, the Court asked the parties to submit briefs in further support of their positions. The Debtors filed Response to Trustee's Memorandum in Support of Motion to Effectuate Execution of Oil and Gas Lease (Doc. # 62) on July 9, 2012. On July 18, 2012, the Trustee filed a second document styled Memorandum in Support of Motion to Effectuate Execution of Oil and Gas Lease (Doc. # 63).

For the reasons set forth in this Court's Memorandum Opinion Regarding Chapter 7 Trustee's Motion to Effectuate Execution of Oil and Gas Lease entered on this date, the Court hereby:

1. Finds that the Trustee is not prohibited from effectuating execution of the Oil and Gas Lease;
2. Finds that the Signing Bonus is property of the bankruptcy estate;
3. Finds that the Ohio Homestead Exemption does not apply to the Signing Bonus;
4. Overrules the Debtors' objection to the Motion to Lease; and
5. Grants the Motion to Lease.